McGregor v. McGregor.

McGregor v. McGregor.

21 441
93 698

1. Pendente lite: DELIVERY OF DEED. While a suit involving the title to certain lands was pending one of the defendants delivered to another a deed executed by plaintiff conveying to such defendant the property in controversy; and three days after such delivery the court entered its decree declaring that the plaintiff was then the owner of said lands. *Held*, that all parties to the decree were concluded by it; and that the rights of the party holding the deed were cut off by the decree.

2. Decree: CONSTRUCTION. The effect of a decree rendered by a court of another State upon the rights of the parties considered and determined.

3. Practice: BRINGING IN NEW PARTIES. An order of court and service of notice making a person a party to defendant to an equitable proceeding, is as effective as an amendment of the petition bringing in such party and repeating the allegations.

McGregor v. McGregor.

4. —— RELIEF GRANTED DEFENDANT. While it is true, as a general rule, that a defendant is not entitled to any affirmative relief except upon the averments of a cross petition, if a plaintiff in his petition prays for an account and a balance is ultimately found in favor of the defendant, he is entitled to a decree for such balance against the plaintiff.

5. —— DISMISSAL AFTER DECREE. After procedendo was issued from the Supreme Court and filed in the District Court, the latter proceeded to render a decree in accordance therewith, granting leave, however, to one of the defendants to withdraw her answer: *Held*, that the granting of such leave did not have the effect to discontinue the case as to such party.

6. Judgment: WHEN BINDING. A judgment upon an issue of fact joined by the pleadings is conclusive upon the parties, although no relief was asked upon it or reference made to it in the petition.

7. Pleadings: DEMURRER. The want of verity in the allegations of an answer cannot be made available by demurrer.

*Appeal from Dubuque District Court.*

THURSDAY, DECEMBER 13.

THESE parties have been three times before this court in controversies growing out of the same general subject-matter as that whereon this action is based. The reports of those controversies may be found in 9 Iowa, 65, 14 Id., 326, and 16 Id., 528; and they are referred to as affording much light and aid in the full understanding of the facts involved in this case, and the discusion of the questions made.

This action is brought to set aside a deed made on the 10th day of November, 1851, by the plaintiff, James McGregor, Jr., to Ann G. McGregor, then the wife and now the widow of Alexander McGregor, who died in 1859, and who was a brother to the plaintiff. The deed, when made, was left by James McGregor, Jr., with the defendant Geo. D. Gardner, a brother of said Ann G. McGregor, to be delivered upon the happening of certain contingencies, and it was delivered on the 19th day of December,

·1862. By an amendment to the petition, after demurrer sustained, the entire record of the first two previous controversies was made an exhibit. The defendants filed an answer and also a cross petition; the plaintiff demurred to each, substantially on the same grounds, to wit, that they did not state facts sufficient to constitute a defense or cause of action, and they stated facts which avoided the defense and cause of action.

The entire transcript in this case is printed, and the pleadings and exhibits, aside from the record of the previous controversies, cover forty-four pages of closely printed matter, and the record of the previous cases two hundred and sixty like pages. Such of the facts as are necessary to the proper understanding of the questions decided, will be found stated in the opinion. Both demurrers were sustained and the defendants appeal.

*Bissell, Shiras & Ballou, Elijah Odell* and *E. F. Bullard* for the appellants.

*James M. McKinlay* for the appellee.

Cole, J.—For about ten years prior to 1851 the plaintiff lived in the State of New York. His brother, Alexander McGregor, lived in McGregor, Iowa, and a portion of the time at Prairie du Chien, Wisconsin, nearly opposite thereto. During much of that time Alexander McGregor was in embarrassed circumstances pecuniarily, and was acting as the attorney in fact for his brother, the plaintiff, under power of attorney authorizing him so to do. As such attorney he purchased and sold lands in the plaintiff's name; operated a ferry for him in part, and made improvements upon lands purchased in plaintiff's name. In 1845 Gregor McGregor, another brother of plaintiff's, died in New York, leaving a will, whereby he bequeathed to plaintiff and another brother, Duncan McGregor, two

thousand dollars, then invested in certain bonds and mortgages, one of which was made by and due from the plaintiffs, to be held by them in trust, the use or interest annually, for the defendant, Ann G. McGregor, during her life; and after her death the like use to Alexander McGregor, her husband, in case he survived her, and the remainder absolutely to the next of kin of Alexander. If any of the principal should be paid before the death of the surviving *cestui que use*, it was to be invested in like bonds and mortgages. In 1851 the plaintiff visited his brother Alexander at McGregor, Iowa, where, in efforts to settle the matters of Alexander's agency for James, a difference arose between them, likely to result in litigation. To compromise this difference, and settle all their affairs amicably, it was agreed that James would sell out all his interest in the property connected with Alexander's business or agency, to the defendant, Ann G. McGregor, for the sum of six thousand and five hundred dollars, two thousand to be paid by the said Ann's securing the appointment of new trustees in Iowa, the release of the old ones, and the securing by bond and mortgage on unincumbered real estate the trust fund to the new trustees. The balance (four thousand and five hundred dollars) said Ann gave her note for to said James, payable on or before six years from date, with seven per cent annual interest. The plaintiff executed and delivered to the defendant, Ann G. McGregor, a bond for conveyance by quitclaim of a part of his real estate upon the payment of the note, and also executed a quitclaim deed to said Ann G. McGregor for certain other property, it being the balance of his real estate, and left the same with the defendant, George D. Gardner, upon the terms specified in his receipt, which was indorsed thereon as follows: "A deed, of which the within is a copy, was left with me, as attorney of James McGregor, Jr., to be

delivered to Mrs. Ann G. McGregor when the trust fund of two thousand dollars, now in the hands of James McGregor, Jr., as trustee for the said Ann G. McGregor, left to her and her heirs by Gregor McGregor, is secured on unincumbered real estate by the said Mrs. Ann G. McGregor, so as to fully clear the said James and Duncan McGregor of the said trust, then I am to deliver the said deed, and not until that is secured as above stated, that being the consideration contained in the deed. The surrogate's certificate from New York releasing James and Duncan McGregor, shall be full warranty for delivering the deed referred to. George D. Gardner."

When the papers were thus executed and delivered, the said James and Alexander exchanged receipts in full of all demands up to that date, which perfected the compromise agreement and the parties separated. There were other minor details, not necessary to the intelligible disposition of the questions involved in this cause.

On the 19th day of December, 1862, the said defendant George D. Gardner, delivered this deed, last named, to the said defendant Mrs. Ann G. McGregor, who procured the same to be duly recorded. This suit is brought for the purpose of setting aside this delivery and deed.

I. The petition avers the residence, kindredship, relation of principal and agent, the will, bequest and trust, effort at settlement and compromise of the parties as above stated; it also avers the subsequent litigation between the parties, and there is annexed to the petition the entire records thereof, as an exhibit; and the delivery and record of the deed to be set aside is also averred; and it is further averred that by such litigation said compromise was wholly set aside and annulled. All these averments, except the last, are either not denied by the answer or are expressly admitted; and as to the last, it is claimed that the defendant Ann G. McGregor

*I. PENDENTE LITE: delivery of deed.*

was not and is not bound by the judgment, so far at least as the same purports to set aside and annul the compromise, and her contract as connected therewith. And this is the first question presented for our determination.

The exhibit discloses the fact that in December, 1852, Ann G. McGregor and her two infant children, instituted a suit in the Supreme Court of New York, in Saratoga county, against James McGregor, Jr., Duncan McGregor, George D. Gardner and Egbert Gardner, in which she averred and claimed that the trust fund under the will of Gregor McGregor had been invested in a portion of the real estate claimed by James McGregor, Jr., and included in the sale to her in and by the compromise.

To state the object of the New York suit, in the language of Ann G. McGregor, as set forth in her rejoinder to the plaintiff's amended reply in the Iowa suit by *James McGregor*, Jr., v. *Alexander McGregor et al.*, it was "for the purpose of testing the question, whether the land described in said contract (of compromise) is the property belonging to the trust fund under the will of Gregor McGregor, or the property of James McGregor, Jr." In March, 1855, there was a decree in this case adverse to the plaintiffs therein, dismissing their bill. On appeal to the Court of Appeals this decree was affirmed in November, 1862.

In December, 1852, Alexander McGregor, as the attorney in fact for James McGregor, Jr., and in his name, conveyed the real estate, included in the compromise sale to Ann G., to George D. Gardner and Egbert Gardner—different portions to each. In January, 1853, James McGregor, Jr., brought his suit in equity in the District Court of Clayton county, Iowa, against Alexander McGregor, George D. Gardner and Egbert Gardner, to set aside the two deeds last aforesaid and to compel

Alexander to deliver up all deeds and evidences of title, and to account for any moneys in his hands belonging to plaintiff. The defendant Alexander McGregor, filed his answer, in which he set out at length the transactions between himself and James McGregor, Jr., and especially set forth the settlement or compromise and the sale of the real estate to Ann G. He then avers that the compromise and sale to Ann G., was a fraud upon him and her and was void, for that the real estate or a material part of it was purchased with the trust fund, and was therefore the property of the *cestui que trusts* and not the property of James McGregor, Jr. He also avers that an order made by a court in New York for the transfer of the trust fund to new trustees in Iowa, was obtained by James through fraud and without any notice to, or the consent of his co-trustee, Duncan McGregor, or other parties interested therein. He also avers, that he purchased the lands with his own means and that the title thereto was taken in the name of James, but in trust for him, the said Alexander, and he avers that he was induced to accede to the compromise by reason of threats by James to revoke his power of attorney and to do other acts greatly to his prejudice, &c., &c.

The defendants in that suit, George D. Gardner and Egbert Gardner, admit that the lands were conveyed to them, and aver that it was done *bona fide*, and that they held the same in trust for Ann G. and Alexander McGregor and their children.

The plaintiff in that suit, James McGregor, Jr., filed his reply denying most of the averments of the answer of Alexander, and especially that the lands were bought with Alexander's means or that there was any fraud on his part in the compromise, and averred full knowledge by Ann G., of every fact connected therewith. He admitted that he held the note of Ann G., for four thou-

sand and five hundred dollars and averred his readiness to cancel the same or hand it over when ordered by the court.

Alexander, by his rejoinder, denies the affirmative matters alleged in the reply, and especially that Ann G., had full knowledge of the facts connected with the compromise, and re-affirms that it was procured by fraud.

At this stage of the proceedings the court, on its own motion, ordered Ann G. McGregor and her only children Gregor McGregor and Gardner McGregor, to be made parties defendants, and directed the clerk to issue notice. There was no amendment of any pleadings made so as to include them as defendants. At the succeeding term an order was made requiring the defendants, who had not answered, to answer within thirty days.

Within the time thus fixed Ann G. McGregor filed her "separate answer to the petition of James McGregor, Jr.," in which she set up the pendency of the New York suit by her and her two children against James Jr., and Duncan McGregor and her husband and the two Gardners, making an exhibit thereof, and averring that the necessary papers for the defense of the suit, wherein she was answering, were on file in the New York suit in which the defendants were the same as in this, and that the proceedings should be continued till that suit, in which some of the same matters were involved, was decided. This answer was signed by herself, and was certified as sworn to.

Duncan McGregor also files his answer as defendant, although the record does not disclose how he became a defendant, or that in fact he was a defendant. His answer is mainly devoted to showing that the trust fund had been invested in the real estate in Iowa, as claimed by Ann G. in her New York suit.

At the November Term, 1856, James McGregor, Jr., filed his amended reply to the answers of Duncan and

Ann G. McGregor, in which he avers that the New York suit had been decided in his favor and he pleaded the same as *res adjudicata* upon the question of the trust fund having been invested in the Iowa lands, and traversed mainly the answer of Duncan. He averred that he was ready to deliver the note of Ann G., for four thousand five hundred dollars, to be canceled upon re-obtaining the legal ᵗtitle to his land; that he had regarded the compromise agreement, made in 1851, as rescinded by reason of the attempts to set it aside and the abandonment of it and the refusal of Ann G. to perform on her part, &c.

To this reply Ann G. and Duncan filed a rejoinder, denying that the New York suit was determined, for that an appeal had been taken from the decision of the Supreme Court to the General Term. The said Ann G. denies that the compromise agreement had been abandoned and rescinded, unless the land should be decreed to be the property of the trust fund, and she avers that if it is still the property of James McGregor, Jr., she is now and always has been ready to comply with it; she denies that James has regarded the agreement as rescinded. James, Jr., then filed the note to be canceled.

Upon these pleadings, and the evidence taken thereunder, the District Court decreed that the portion of the real estate included in the compromise agreement and sale to Ann G., as claimed by her, was the trust property and purchased with the trust fund, and also decreed that the note given by Ann G. to James, Jr., be given up to her and canceled; and as to the other property, and the matters of account between James, Jr., and Alexander, they were referred to a referee to adjust and report.

From this decree, the plaintiff, James McGregor, appealed to the Supreme Court, where so much of the decree as directed the note to be given up to Ann G.

and canceled was affirmed; as to the .balance of the decree it was reversed, and the Supreme Court held that the trust fund was still in New York and had not been invested in the Iowa lands as claimed by Duncan, Alexander and Ann G. McGregor. See 9 Iowa, 65.

A *procedendo* from the Supreme Court was filed in the District Court, and at the first term thereafter the District Court rendered a decree. The decree commenced with the title of the cause as it originally stood, and then proceeded as follows : " Owing to the death of Alexander McGregor the style of this case is changed to — James McGregor, Jr., v. George D. Gardner, Egbert Gardner, Duncan McGregor, Gregor McGregor, Gardner McGregor and Ann G. McGregor, and George D. Gardner, Duncan McGregor and Ann G. McGregor as executors of the estate of Alexander McGregor."

The court then decreed that the trust fund was still in New York ; that the two deeds made by Alexander McGregor, as attorney in fact for James McGregor, Jr., to the defendants, George D. Gardner and Egbert Gardner, be set aside as fraudulent and void; that. James McGregor, Jr., was the owner of the real estate as claimed by him, particularly describing it — it being the same as that sold to Ann G. by the compromise, and claimed by her to be the trust property. As to the rights of the parties to the other property and the accounts between Alexander and James, Jr., they were referred to a referee to adjust and report, &c. The decree concluded as follows : " Leave is granted defendant to withdraw answer of Ann G. McGregor."

At the next term. of the District Court a motion was filed by defendants, to set aside this last decree. Upon the hearing of this motion, it was sustained and the decree canceled and set aside. The court then decreed that. the trust fund was not invested in any portion of the

lands in controversy, in that suit; and as to the other matters, the cause was referred to a master to report the accounts between the parties, and also the amount paid for each tract of land and with whose money the several tracts were bought; also the amount expended for improvements, and by whom; and also the amount received by Alexander upon the sale of any real estate involved in the suit.

Upon the coming in of the master's report the defendants filed exceptions thereto, but the same were overruled, and a decree entered pursuant to it. By the decree the two deeds made by Alexander McGregor, as attorney in fact for James McGregor, Jr., to George D. Gardner and Egbert Gardner, were set aside, and held for naught as fraudulent and void; that said James McGregor, Jr., purchased, with his own means, the real estate in controversy, describing it, and was the owner thereof. (The decree describes all the lands embraced in the deed sought to be set aside by this suit; but the interest of James, Jr. is described as an undivided half of a portion thereof.) And it was further ordered and decreed that James McGregor, Jr., have and recover of the defendants, as executors of Alexander McGregor, deceased, $1,723.06, and costs of suit.

From this decree the defendants appealed to the Supreme Court, where all the decree, except as to the statement of the account, was affirmed.

The Supreme Court revised the statement of the accounts as made by the master, and found due from James McGregor, Jr., to the executors of Alexander McGregor, deceased, the sum of $3,263.71, and for which judgment was entered, with costs, in the Supreme Court. See 14 Iowa, 326.

Afterward a bill for a review was filed in the Supreme Court by the defendants.

The plaintiff filed a motion to dismiss the bill for review, for the want of jurisdiction, and other causes. This motion was sustained. See 16 Iowa, 538.

It would seem, upon general principles, that since Ann G. McGregor was a party in both her individual and representative capacities, to the former suit, in which the right to the identical lands, embraced in the deed sought to be set aside by this action, were in controversy, and in which suit the plaintiff therein and herein, by a decree of the Supreme Court, rendered on the 22d day of December, 1862, was adjudged to be the owner of the lands, that she would be concluded from claiming the same lands by virtue of the delivery of a deed, by another party to that suit, on the 19th day of December, 1862, only three days before the final decree, and while that suit was pending. The maxim, *pendente lite nihil innovetur*, which is fully applicable, would prevent the conveyance or the delivery of it, from the time of which delivery only it would take effect, from varying the rights of the parties in that suit; for, with regard to them, the title is to be taken as if there had been no such delivery. Story's Eq., Jur., § 908. The decree in that case fixed the rights of the parties at the date of its rendition, and no secret act by the parties before its rendition, like the making or delivering of a deed, could nullify the decree and affect the rights of the parties under it. If, then, James McGregor, Jr., was the owner of the property at the date of the decree, and three days after the delivery of the deed, it would seem to follow that he is still the owner as against the defendant Ann G. McGregor, who has acquired no right to it since the decree, but whose right, if it ever had any existence, accrued before the decree, and was cut off by it.

But we pass from this general view and proceed to examine the specific objections made to the conclusiveness

2. DECREE:
construction.

of that decree as against Ann G. McGregor. It is urged that the decree of the Supreme Court of New York, in the case brought by Ann G. McGregor and others against James McGregor, Jr., and others, settled and adjudicated that the compromise agreement and sale to Ann G. was valid, binding and obligatory upon the parties to it. That decree " ordered and adjudged that no portion of the trust fund  *  *  *  has ever been transmitted to, or invested in lands in the State of Iowa  *  *  *  and that it has not been shown that the promissory note  *  *  *  for the sum of four thousand five hundred dollars  *  *  *  was obtained by fraud ; and it is further ordered and adjudged, that the plaintiffs are not entitled to judgment; that James McGregor, Jr., release all right to the property in Iowa mentioned in the complaint ; nor to have the agreement or note mentioned in the plaintiffs' complaint canceled."  *  *  *

This decree is formal and negative, but amounts to no more than the usual decree in such cases—that the court finds no equity in plaintiff's bill, and dismisses the same absolutely.

And when the plaintiff's complaint is examined and its object ascertained, it is very apparent that under it and the other pleadings in the cause, no decree affirmatively adjudging the validity and binding obligation of that settlement could properly have been rendered.  Ann McGregor, in her rejoinder to James McGregor's reply in the Iowa suit, has very succintly and truly stated the issue in the New York suit, as follows: " That she has instituted the said suit in New York for the purpose of testing the question, whether the land described in said contract is the property belonging to the trust fund under the will of Gregor McGregor, or the property of James McGregor, Jr." That decree then simply settled the question that the

land described was not the property of the trust fund, under the will of Gregor McGregor, deceased; and it did not adjudicate that the compromise agreement and sale to Ann G. was binding or had not been rescinded, and hence it cannot be relied upon by Ann G. as establishing either of these latter facts.

It is further claimed that since Ann G. McGregor was not named as a party defendant to the petition filed by 3. PRACTICE: James McGregor, Jr., in Iowa, that no valid bringing in new parties. adjudication upon the matters therein or arising thereon, could be made against her. We hold that the order of court and service of notice making her a party defendant thereto, was as effective as if there had been an amendment of the petition making her a party and repeating its averments as against her.

The petition in that suit, however, does not contain any allegation in relation to the compromise agreement and 4. — relief sale to Ann G., nor any prayer for relief granted de- fendant. against it. The subsequent pleadings, however, as between James McGregor, Jr., and Ann G. McGregor, do make the plain and direct issue upon the question, whether that agreement had been rescinded or was still valid and binding. Upon that issue the District Court found and decreed, "that the said note for four thousand and five hundred dollars  *  *  *  be given up to the said Ann G. McGregor, and that the same be canceled." And in relation to that portion of the decree the Supreme Court use this language: "The parties concur in the conclusion, though upon different grounds, that so much of the decree as relates to the note of $4,500 shall remain undisturbed. The agreement made in 1851, therefore, and all rights and liabilities arising under it, may be dismissed without further notice."

The prayer of the petition was especially for, among other things, an account of moneys received by Alexander,

and for all such other and further relief as the nature of the case might require. Under this prayer the relief afforded by the decree was proper.

Nor is there any good foundation in the objection to the final decree in favor of the defendant, Alexander McGregor, or his executors, for the amount found due him on the accounting, between him and the plaintiff, James McGregor, Jr. While it is true, as a general rule, that a defendant is not entitled to any affirmative relief, except upon the averments of a cross petition, yet there is at least one exception to this rule.

When a plaintiff files his petition for an account, if a balance is ultimately found in favor of the defendant, he is entitled to a decree for such balance against the plaintiff. And in such cases he is entitled to other affirmative orders also. Story's Eq. Jur., § 522. The plaintiff, James McGregor, Jr., filed his bill against Alexander McGregor and others to set aside two deeds and for an account. The proof showed Alexander McGregor to be entitled to a certain sum, and a judgment was rendered in his favor for the amount found due him. This affirmative relief was authorized by the rule above stated.

After the *procedendo* was issued from the Supreme Court and filed in the District Court, the latter proceeded, at the July Term, 1860, to render a decree, as hereinbefore stated; and the decree closes with: "Leave is granted defendant to withdraw answer of Ann G. McGregor." We hold that this entry of leave to withdraw answer, did not have the effect of discontinuing the case as to Ann McGregor, nor of dismissing her from the case. And especially so, since immediately thereafter that decree was, on motion of the defendants, by their attorney, canceled and set aside, and a new decree entered without such leave, from which the said Ann G. McGregor, with the other defendants,

appealed to the Supreme Court, and she was one of the persons signing the supersedeas bond on the appeal.

Without discussing further the specific objections to the conclusiveness of that decree as against Ann G. Mc-Gregor, we may state the sum of the pleadings as between her and the plaintiff therein, James McGregor, Jr., as follows:

6. JUDGMENT: when binding.

The plaintiff brings his action to set aside two deeds, and for an account with his attorney in fact, who made them; in the progress of the cause, it is made to appear to the court that Ann G. McGregor claims an interest under the deeds and in the property conveyed by them, adverse to the plaintiff; thereupon the court orders her to be made defendant, and it is done; she appears and defends the claim of the plaintiff to have the two deeds set aside, upon two grounds (among others); first, that the property was trust property, and the deeds were made in execution of and to secure the trust; and second, if that was not found to be true, then she claimed the property by virtue of the compromise agreement, and sale to her by the plaintiff. Issue was taken upon these defenses, and they were both adjudged against her, and the plaintiff had a decree for the relief demanded.

Now, the question of the continued validity and binding effect of that compromise agreement and sale to Ann G. McGregor, was just as directly in issue as if it had been set up and assailed by the plaintiff in his petition and relief asked as against it. And the right and duty of the court to adjudicate it, and the conclusiveness of the adjudication upon it, is the same as if its alleged invalidity had been the basis of the plaintiff's claim. Just as in a suit upon a promissory note, where the defendant sets up a sale and delivery of a horse in payment of it, and it is found that there was no such sale or delivery, and the plaintiff has his judgment—now that judgment

McGregor v. McGregor.

is just as conclusive upon the defendant in a subsequent action for the horse, as if the claim, as made by the defense in the action on the note had been set up and assailed as unfounded by the petition. The judgment in the action on the note is conclusive against the defendant's claim, although no relief was asked upon it, or reference made to it in the petition.

The fact that Ann G. McGregor was a married woman does not affect the conclusiveness of the judgment or her rights under it.. The controversy was in relation to property claimed by her in her own separate right.

We conclude, therefore, that the judgments in the former litigations are *res adjudicata* upon the rights of Ann G. McGregor and the other parties under the compromise agreement and sale, and that she is estopped thereby from claiming any thing thereunder. So far, then, as the answer alleges matters contrary to the admitted records and judgments, it was insufficient, and the demurrer to that extent was rightfully sustained.

II. The petition in this action contains the averments that soon after the settlement of 1851, to wit, in the fall of 1852, the said Ann G. and Alexander McGregor did renounce and repudiate the said settlement and sale; and it was mutually understood and agreed between the said Alexander McGregor, Ann G. McGregor and the plaintiff, that the said settlement and arrangement should be deemed and held null and of no further binding force or effect upon either of the said parties thereto ; that the defendant, George D. Gardner, confederating with the defendant, Ann G. McGregor, for the purpose of cheating the plaintiff, under pretense of authority to do so under his receipt indorsed on the deed, but well knowing that the conditions had not been complied with, and that the settlement had been by all parties repudiated and held for naught,

*7. PLEADINGS: demurrer.*

did on the 19th day of December, 1862, deliver said deed to Ann G. McGregor; that said settlement of November, 1851, was all of a piece and one transaction, and the same has been abandoned and rescinded by the mutual act of the parties: that all right to deliver said deed had ceased by reason of lapse of time; and that plaintiff had been put to great labor and expense in maintaining his rights in certain suits all which arose from defendant's repudiation and abandonment of said settlement.

The answer contains a specific denial of each and every of these averments. The demurrer admits the truth of these denials. It was, therefore, according to the strict rules of pleading, an error to sustain the demurrer as to these denials. It matters not how untruthful they may be; their want of verity cannot be made available by demurrer. The answer presents to that extent issues of fact, upon which the defendant has the right to a trial in the manner provided by law. But of course upon such trial the record of the former adjudications will be sufficient to overcome the denials.

III. The cross petition sets up a claim by Ann G. McGregor to the property conveyed by the deed by virtue of the settlement and sale of 1851. It sets out, at considerable length and detail, a history of the dealings, transactions and instruments between James and Alexander, and especially the compromise agreement and sale in 1851. The records and proceedings in the previous cases, it is agreed, shall be considered as an exhibit to and part of the cross petition. Being thus considered and taken in connection with the allegations of the cross petition, the whole matter is disposed of in what we have said in the discussion of the first point on the demurrer to the answer. There was no error in sustaining the demurrer to the cross petition.

But for the error as specified in the second point, on the demurrer to the denials of the answer, the judgment is

Reversed.

LOWE, Ch. J., was not present at the argument or consultation upon the case, and, therefore, takes no part in the decision of it.