R. E. PURSLOW V. JACKSON, PATTERSON & COMPANY, *et al.*, Appellants.

**Accounting.** A settlement of partnership dealings induced by concealments, where there was duty to speak, will not estop a full accounting.

SAME. That notes taken by the partnership are not yet matured is no defense when all of them are either paid or sold, and where plaintiff's right to further profits is denied.

RES ADJUDICATA. A partner appeared to an action in accounting and then withdrew his answer. Matters urged by him in a subsequent action were not necessarily involved in the first action, though he might have submitted them therein. *Held*, the first action is no bar to the second.

*Appeal from Woodbury District Court.*—HON. A. VAN
WAGENEN, Judge.

MONDAY, FEBRUARY 4, 1895.

Action in equity for an accounting, and to recover
an amount alleged to be due the plaintiff. There was
a hearing on the merits, and a decree in favor of the
plaintiff. The defendants Jackson, Patterson & Co.,
Andrew M. Jackson, and J. O. Patterson appeal.—
*Affirmed.*

*Wilson & Quick* for appellants.

*Martin Neilan* for appellee.

Robinson, J.—In the year 1889 the plaintiff and
the appellants became jointly interested in a forty-acre
tract of land which was located two and one-half miles
northeast of the postoffice in Sioux City. The land
was purchased for thirty-two thousand dollars,
and within a year was sold for the sum of forty-
five thousand six hundred dollars. The plaintiff claims
that the purchase was made for the joint benefit of him-
self, W. H. Beck, J. H. Preston, and the copartnership
of Jackson, Patterson & Co.; that the share of the lat-
ter was to be two-fifths, and of each of the other per-
sons named one-fifth, of the land purchased; that the
business of purchasing and selling it was done by Jack-
son, Patterson & Co.; that, although the purchase price
was but thirty-two thousand dollars, they, for the pur-
pose of cheating and defrauding the plaintiff, repre-
sented that it was thirty-five thousand dollars; that
they fraudulently represented to him that it was sold for
the sum of thirty-seven thousand five hundred dollars;
and that they have accounted to him for his original

investment of five hundred dollars, and for five hundred dollars in addition, from which, however, eighty dollars and forty cents were deducted for expenses. He asks for an accounting and for judgment against Jackson, Patterson & Co. for the amount to which he shall be found to be entitled. The plaintiff alleges that the defendant James A. Jackson is a member of the firm of Jackson, Patterson & Co. He also made Beck and Preston defendants, but they did not appear to this action, and are not interested in this appeal. James A. Jackson filed an answer, in which he denied that he was a member of the firm named, and denied all the allegations of the petition. The District Court found and adjudged that he was not a member of the firm, and that he was not liable in this action. We only need to say in regard to him that the evidence fully sustains the finding and decree of the District Court in regard to his relation to the firm and his liability. The evidence shows that the firm was composed of Andrew M. Jackson and John O. Patterson only, and the controversy in this action is really between them and the plaintiff. They contend that the matters in dispute were involved in an action brought by Beck, to which the plaintiff was a party, which was pending when this action was commenced; that such matters were so far adjudicated in that action that the plaintiff is estopped to maintain this action. They further insist that they purchased the land in question for themselves, and that thereafter, in March, 1889, they sold to the plaintiff one-fifth of the interest they had acquired on the basis of thirty-five thousand dollars for the entire tract; that in February, 1890, they purchased of the plaintiff his interest for the sum of nine hundred and nineteen dollars and sixty cents, and received therefor a quitclaim deed. As a further defense, they allege that this action was prematurely brought. The District Court decreed that the plaintiff

have and recover of the firm and of its members the sum of one thousand nine hundred and forty dollars and costs.

I. In March, 1890, Beck commenced an action against the appellants in this case, against the plaintiff in this case, and against Preston, in which he alleged that the purchase of the land in question was for the benefit of the parties to that action as partners, stating the price for which it had been purchased and for which it had been sold; that the business had been transacted by Jackson, Patterson & Co.; and asking for an accounting, and for a judgment against them for one-fifth of the profits. The plaintiff appeared in that action, and filed an answer, in which he denied the allegations of the petition, and averred that in March, 1889, he purchased of Andrew M. Jackson and J. O. Patterson one-fifth of the land in controversy for seven thousand dollars, of which he paid five hundred dollars, and that he afterward conveyed to them all the interest he had acquired, and that he then had no interest in the property or its proceeds. In May, 1891, after this action was commenced, he withdrew his answer in that action, stating in the instrument of withdrawal that the answer had been made and filed under a misapprehension of facts. He made no further appearance in that action, although it was heard on its merits. On the submission, in August, 1892, the District Court found that Beck was not entitled to recover, and dismissed his petition. The adjudication in that case was pleaded in this before it was finally submitted for determination. The appellants contend that the pendency of the Beck action was a bar to this, and that the adjudication in that estops the plaintiff to maintain this. It is not alleged that the cause of action upon which the plaintiff seeks to recover was set out in the Beck Case, nor that it was referred to in the decree, but

that the plaintiff might have pleaded in that case, and
have had adjudicated, the cause of action upon which
he relies in this.

It is true that in the Beck Case the petition alleged
in regard to the transaction in question substantially,
the same that the plaintiff claims in this; that his
answer contained a general denial; and that the court
found that Beck had no cause of action. But, before
that finding was made, the plaintiff had withdrawn his
answer, and as to him the allegations of the petition
were not denied. He had ceased to claim anything
adverse to Beck, and his right to recover for the cause
of action he now sets out was not in any manner
involved. He claimed nothing as against his codefend-
ants, and they claimed nothing as against him, and he
and they claimed nothing in common. Their answers
were separate, and they acted independently of each
other. Although the plaintiff might have so pleaded
in that action as to have presented his claim fully, yet
he was not obliged to do so. What he claims would not
have constituted any defense to the alleged right of
Beck to recover, and there was nothing in the case which
made it his duty to present his claims against his code-
fendants for adjudication under penalty of being
estopped to assert them. It is said that a defendant in
an action for an accounting is entitled to a decree for
any amount found due him without filing a counter-
claim or cross petition. *McGregor v. McGregor,* 21
Iowa, 454. But in the Beck Case no accounting was
asked as against this plaintiff, and he was not entitled
to any relief as against Beck. There are cases in which
a decree is necessarily an adjudication of the rights of
codefendants as between themselves; as, where the order
of distribution among them of a fund in controversy is
to be determined, and they have had an opportunity to
be heard. But no question of that kind was involved

in the Beck Case.   See *Montgomery v. Road*, 34 Kan. 122, 8 Pac. Rep. 253; 2 Black, Judgm., section 599. Although the two actions involved the same purchase and sale of the land in question by the appellants, yet the relations of Beck and the plaintiff to the transaction were not in all particulars the same, and their respective claims did not rest upon the same facts. The plaintiff paid a part of the purchase price of the land, while Beck paid nothing.   The negotiations to induce them to take an interest in the land were conducted separately with each, and the evidence to support their respective claims was not the same.   One may have been entitled to recover, and the other not. We conclude that there is no ground for holding that the right of the plaintiff to maintain this action was in any manner affected by the pendency of the Beck Case or the adjudication therein.

II.   It is said this action was prematurely brought. A part of the consideration received by the appellants for the sale of the land was in promissory notes, some of which had not been paid when this action was commenced.   That defense would at most only go to the amount of the recovery.   But it is not shown that any of the notes taken were worth less than their face, with interest; and we understand the fact to be that all have now been paid or sold.   Moreover, when the action was commenced, the appellants denied the right of the plaintiff to a further share of the profits.   Under these circumstances, there is no ground for concluding that the action was brought prematurely.

III.   We are next required to determine whether the plaintiff has a meritorious cause of action.   There

is irreconcilable conflict in the evidence as to several important matters, but we think that facts have been shown substantially as follows: Early in the year 1889 the appellants attempted to form a syndicate to purchase the land in question. Several different persons were approached in regard to the matter. Finally, the plaintiff, Beck, and Preston consented to join the appellants in making the purchase, and it was agreed that the land should be conveyed to W. P. Manley, as trustee to act for the syndicate. The arrangements made were somewhat informal, and no meeting of all the persons who became interested in the venture was had. To what extent Beck and Preston became responsible in the matter we are not required to determine, but it is clear that the plaintiff believed that he was purchasing an undivided one-fifth of the land, not of the appellants, but of its owner, with the aid of the appellants, and that he assumed payment of one-fifth only of the price for which the land was obtained of its owner by the appellants, or for one-fifth of thirty-two thousand dollars. The appellants gave to the plaintiff ample grounds for that belief, and must be held to have made the agreement as he understood it. It is true the agreement for the purchase of the land was made in the name of the appellants, and that the name of the appellee did not appear in any of the various instruments relating to it which were executed by the trustee and others; but the appellee saw few, if any, of those instruments, and was not responsible for the form in which they were drawn. He intrusted matters of that kind wholly to the appellants. His answer in the Beck Case tends to support their claims, but it is shown that it was drawn by their attorney; that, when it was drawn, the plaintiff did not understand the facts involved, and that he had been misled by the appellants. The answer was regarded by him as a formal matter.

He relied wholly upon the attorney as to what it should contain, and the attorney does not appear to have been fully advised as to all the facts in the case. We do not think that the answer can be justly given much weight against the plaintiff.

The evidence justifies the conclusion that he was interested with the appellants in their purchase of the land, and that he became entitled to one-fifth of all the profits which were realized from it, unless he parted with that right by a sale to the appellants.

It is not denied that he made a conveyance to them of his interest in the land in February, 1890; but he contends that the conveyance made was induced by fraud and concealment on the part of the appellants, and that he is not estopped by it to show the facts, and recover his rightful share of the profits. He insists that the land had been sold when the conveyance by him was made; that he did not know the amount for which it was sold; that the appellants stated to him that the amount was but thirty-seven thousand five hundred dollars; and that he believed the statement, and relied upon it in relinquishing his interest in the land. The appellants contend that the sale had not been made at that time; that there had been much trouble to perfect the title of record; that the purchaser had made objection to it, which had not been met, and that it was not certain at the time the plaintiff conveyed his interest that the sale would be effected; that he was told that the prospect for a sale at a large profit was good, but there might be delay, litigation, and perhaps a failure to sell, and that it might be necessary to advance a large amount of money on account of the land; that the plaintiff stated that he could not raise his share of the money, and preferred to sell his interest for the price offered, and thus make certain a good profit on his investment, than to incur the risks of delay and failure

to sell and consequent burdens which might be imposed upon him. There had been considerable delay in securing a good title to the land, and in satisfying Stevens, the man to whom it was sold, in regard to it. The deed from the owner of the land to Manley, as trustee, had been forwarded from Chicago, and was held in Sioux City, for delivery, for some months. While it was so held, the agreement to sell the land to Stevens was entered into, but he made objection to the title, and considerable time was consumed in perfecting it. Before it was done, the deed to Manley was ordered back to Chicago. About the first day of February, 1890, the appellants sent an agent to Chicago, who arranged for a return of the deed, and for the completion of the purchase. On the sixth day of February, the transaction was practically closed, and the sale to Stevens effected. On that day he paid ten thousand dollars of the purchase price. After that was done, the plaintiff was called in, and the transfer of his interest was obtained, although the deed which he gave was not executed until the tenth day of February. The evidence does not satisfy us that the appellants represented that the land had been sold for thirty-seven thousand five hundred dollars, but it satisfies us that the actual condition of the negotiation for a sale was concealed, and, that, had it been known to the plaintiff, he would not have parted with his interest as he did. The sale to Stevens was not fully completed until the thirteenth day of February, but it was practically assured on the sixth. The appellants obtained the conveyance from the plaintiff by concealing facts which their relation to him made it their duty to disclose, and by exaggerating the difficulties in the way of completing the sale, the chances of a failure to make it, and the probability that the plaintiff would be compelled to advance more money on account of the land. What was concealed and what

was said by the appellants operated as a fraud upon the plaintiff, which avoids the attempted settlement for his interest in the land and the profits realized from the sale.    The evidence shows that he is entitled to recover at least as much as the amount allowed by the District Court; and he must be content with that, as he does not appeal.    The decree of the District Court is *affirmed*.