CHARLES LININGTON

*v.*

GEORGE H. STRONG *et al.*

*Filed at Ottawa March 28, 1883—Rehearing denied September Term, 1883.*

1. FRAUD—*negligence of the other party, as affecting the character of the fraudulent conduct.* A party guilty of fraudulent conduct, whereby he induces another to execute a written contract, will not be allowed to impute negligence to the latter as against his own deliberate fraud. Even where parties are dealing at arms' length, if one of them makes to the other a positive statement upon which the latter acts, with the knowledge of the party making such statement, in confidence of its truth, and such statement is known to be false by the party making it, such conduct is fraudulent, and from it the guilty party can take no benefit.

2. While the law requires of all persons the exercise of reasonable prudence in the business of life, and does not permit one to rest indifferent in reliance upon the interested representations of an adverse party, still there

is a certain limit to this rule; and as between the original parties, when it appears that one has been guilty of an intentional and deliberate fraud, by which, to his knowledge, the other has been misled and influenced in his action, he can not escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised reasonable care and diligence.

3. SAME—*change in contract--whether material.* Where a party agreed to a contract which bound him to manufacture and sell 2500 dozen pinchers per year, and to pay thereon, quarterly, to the patentee, a royalty of $1.44 per gross, and the other party presented for execution what he claimed to be copies, which bound him to pay a royalty on 2500 dozen pinchers per annum, at the rate of $1.44 per gross: *Held,* that the variance or difference in such respect was not so material as to import fraud, or lead to the conclusion that had the latter been fully read the party executing the same would have refused to sign it.

4. SAME—*affirming contract after notice of the fraud.* Where a contract, before signing, has been changed as to the character of the obligation imposed, and the same is afterwards signed by the person to be bound, without knowledge of such difference, he can not avoid the contract as executed if he ratifies and acquiesces in it after his attention has been called to the change.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.

Mr. E. A. SHERBURNE, for the appellant:

Credulity on the part of one is no license for fraud in another. *Kirkland* v. *Lott et al.* 2 Scam. 15; *Weatherford* v. *Fishback,* 3 id. 175; *Devine* v. *Edwards,* 87 Ill. 177; *Lloyd* v. *Higbee,* 25 id. 603.

When a bargain is made and concluded, the rule of *caveat emptor* ceases, and both parties afterwards are bound to exercise good faith in carrying out the contract; and if one is trusted to reduce the contract to writing, he is bound to do it truly, and any variation from it by inserting provisions not embraced in it, or omitting some of its terms, if not known and assented to by the other, is a fraud. *Botsford* v. *McLean,* 45 Barb. 487; *Whitney* v. *Roberts,* 22 Ill. 381.

The appellant repudiated the contract as soon as he learned of the fraud, and made no more instruments after he discovered the change in the contract. But suppose he had continued to make the pinchers and sell all he could, that would be no ratification of the fraud, but simply carrying out, as he had a right to do, the contract he had actually made.

Messrs. SMITH & BURGETT, for the appellees:

The law conclusively presumes that appellant knew the terms of the written contract when he signed it. No trick or artifice was used to prevent his reading the same. He can not now say he did not read it. *McCormick* v. *Malbury*, 43 Iowa, 561; *Hawkins* v. *Hawkins*, 50 Cal. 558; *Dutton* v. *Clapper*, 53 Ind. 276; *Clodfelter* v. *Hulette*, 72 id. 137; *Rogers* v. *Place*, 29 id. 577; *Bacon* v. *Markley*, 46 id. 116; *Wooley* v. *Moore*, 77 id. 567; *Faucett* v. *Currier*, 115 Mass. 20; *Same* v. *Same*, 109 id. 99; *Maine Ins. Co.* v. *Hodgins*, 66 Maine, 109; *Watson* v. *Planters' Bank*, 22 La. Ann. 14; *Upton* v. *Tribilcock*, 91 U. S. 45; *McClellen* v. *Sanford*, 26 Wis. 595; *Albany City Bank* v. *Martin*, 56 How. Pr. 500; Bigelow on Frauds, 73, 74, 115; Cooley on Torts, 488, 490; 2 Kent's Com. 484; 1 Story's Eq. Jur. sec. 105, 200 a, 237.

It was the duty of appellant to have read the contract, or have another read it for him, when no artifice was used to keep him from doing so. A man is bound to use ordinary care to prevent fraud or imposition, and if he fails to do so the courts can not relieve him. *Fayon* v. *Newson*, 1 Dev. L. 20; *Farrar* v. *Olsten*, id. 69; *Foley* v. *Cowgill*, 5 Blackf. 18; *Gatling* v. *Newell*, 9 Ind. 572; *Binck* v. *Wood*, 43 Barb. 315; *Mainlock* v. *Fairbanks*, 46 Wis. 415; *Brown* v. *Fagan*, 71 Mo. 563; *Slaughter* v. *Gerson*, 13 Wall. 379; 57 Ill. 327; 19 id. 486; 15 id. 540; 4 Scam. 202; 22 Ill. 610; 56 id. 179; 70 id. 350.

If the means of knowledge are at hand at the time, the law presumes that a party relies upon his own knowledge,

and will not permit a denial. See the cases cited in counsel's brief in *Strong* v. *Linington*, 8 Bradw. 436.

Cases where one party falsely states to the other the terms of the instrument, are to be distinguished from those in which a different paper is surreptitiously substituted for that intended to be executed, Bigelow on Torts, 29, 30; Bigelow on Frauds, 73–78; *Byers* v. *Daugherty*, 40 Ind. 198; *Laidla* v. *Loveless*, id. 211; *Nebeker* v. *Cutsinger*, 48 id. 436.

Mr. Justice Dickey delivered the opinion of the Court:

This was an action of assumpsit, brought in the Superior Court of Cook county, by appellees, against appellant, to recover an amount of money claimed to be due April 1, 1880, upon a contract between appellant and appellees, dated April 1, 1876, which contract provided that appellant, in consideration of the grant to him by appellees of the exclusive right and privilege of manufacturing a certain patented invention within the United States and Territories, for an improvement in pinchers, for the period of five years from the date of the contract, agreed to pay a royalty of $1.44 for each gross of pinchers manufactured, payment to be made quarterly, at the end of each quarter year; to keep an accurate book account of the number of pinchers manufactured and sold, and render a true statement thereof at the end of each quarter; and further agreed to pay a royalty on at least 2500 dozen of said pinchers each year during the term of the contract, in default whereof appellees might terminate the contract. There was a clause in the contract providing that one-half of the royalty on 2500 dozen was to be paid to each of the parties of the first part, and as to all pinchers sold in excess of 2500 dozen the payment was to be, sixty per cent to Strong, and forty per cent to Young. The contract was set out in full in the first count of the declaration. There was a plea of the general issue, trial before a jury, and verdict for $328. A motion for a new trial was overruled, and judg-

ment on the verdict, and appeal. The judgment of the trial court was affirmed in the Appellate Court for the First District, and an appeal was allowed by that court in the cause, and the case is before us to determine the propriety of the action of the Appellate Court in affirming the judgment.

It is urged in behalf of the appellees, that in the absence of any finding of facts by the Appellate Court, it must be taken, as found by that court, that the facts in the case are adverse to appellant. This point the appellant attempts to meet by the suggestion that he does not ask this court to pass upon any controverted questions of fact, but claims that the judgment is erroneous upon the uncontroverted facts established, and that the instructions given by the trial court did not correctly present to the jury the law governing the case. The language of sec. 90 of the Practice act, as found in chap. 110, Hurd's Stat. 1880, is as follows: "The Supreme Court shall reëxamine cases brought to it by appeal or writ of error, as to questions of law only, and no assignment of error shall be allowed which shall call in question the determination of the inferior or Appellate courts upon controverted questions of fact in any case, except those enumerated in preceding section."

In the trial court, as matter of defence to the action, it was contended that the appellees were not entitled to recover upon the contract sued on, because, as was alleged, after the terms of the contract had been agreed upon between the parties thereto, and a draft thereof reduced to writing, appellees took such draft for the purpose of having it copied in triplicate, returning with what they claimed to be exact copies thereof, which copies appellant examined cursorily,—sufficiently to satisfy himself of the general nature of the paper,— and then signed, without reading it over carefully, and it is claimed that in the contracts thus signed there were two alterations from the draft which had been agreed upon, which alterations were of a material character. What was claimed to be the original draft of the contract in evidence, after pro-

viding for the assignment of the right to manufacture for the term of five years, etc., proceeded as follows: "And in consideration thereof, the said party of the second part agrees to pay to the party of the first part a royalty of $1.44 for each and every gross of said pinchers made and sold by him during said time, payment to be made at the end of each quarter year at the office of said second party, in Chicago. And said second party hereby agrees to keep a correct book account of the number of said pinchers manufactured and sold by him, and render a true statement therefrom to said party at the end of each quarter, and shall also make and sell at least 2500 dozen of said pinchers per year during the term aforesaid, and in default thereof this contract may, at the option of the said party of the first part, be declared null and void." The language of the contract as signed, after stating the assignment, etc., was as follows: "And in consideration therefor, the said party of the second part agrees to pay the party of the first part a royalty of $1.44 for each and every gross of said pinchers made and sold by him during the said time, payment to be made at the end of each quarter year at the office of the said second party, in Chicago. And said second party hereby agrees to keep a correct book account of the number of said pinchers manufactured and sold by him, and render a true statement therefrom to the said first party at the end of each quarter, *such statement of account to be verified by affidavit by the party of the second part,* and also agrees *to pay the royalty on* at least 2500 dozen of said pinchers each year during the term aforesaid, *the same to be paid quarterly, at the expiration of each and every quarter,* and in default thereof this contract may, at the option of said party of the first part, be declared null and void." Then follows the provision as to the distribution of the royalty, which was added in the contract by agreement of the parties. Evidence tending to show that these allegations were true is found in the record.

As against the claim of fraud, whereby it was sought to defeat their action, appellees relied upon the fact, alleged by them, that they were, at the time of the dealing, in an adverse attitude with the appellant,—under no trust relation or obligation to him,—and that he had the fullest opportunity to read the contracts that were executed before signing the same, and it is claimed that appellant's omission to read the contracts before signing was such negligence upon his part as to defeat his right to deny his obligation under the terms of the contracts signed by him.

We find in the charge to the jury no cause to reverse this judgment. The court below instructed the jury, in effect, at the instance of the appellees, that the law requires every person to exercise reasonable prudence in business affairs, and that before relieving a party from the obligations of a contract upon the ground of fraud, it must appear that he exercised reasonable care and prudence to learn the nature of the contract before executing it; that if the defendant could read, and had an opportunity to read the contract before signing, it was his duty to do so, unless induced not so to do by willfully false statements of the plaintiffs, or one of them, as to its being a copy of the original; and if the defendant had full opportunity to read the contract before signing it, and was not induced to sign it by false statements made by plaintiffs, or either of them, the defendant would not be permitted to deny knowledge of the contents thereof. To the giving of this instruction, and to the modifying of the instruction asked by defendant, defendant excepted.

The modification of the defendant's instruction complained of was in the court's adding to the clause in the instruction reading as follows, "and if the jury believe, from the evidence, that such representations were false, and made with fraudulent intent, to induce defendant to sign, and plaintiffs added to said alleged copies material conditions, hereinafter named, not contained in the original draft, and not known

or consented to by the defendant, then such contract was not binding upon the defendant," the following limiting clause, to-wit: "Unless ratified by him after knowing the fraud, if the jury, from the evidence, should so find." It is contended that there is no evidence in the record tending to support this qualification of the defendant's instruction, but in fact there is evidence tending to show that some time after the first quarter's royalty fell due by the terms of the contract, appellees called upon appellant and demanded $75 claimed to be due for the quarter. Appellant denied his liability to them for any quarterly payment, when appellees told him to look at his contract. No payment was, in fact, made at the time, and appellant swears that he did not look at his contract for a number of months after this interview. This evidence, however, tends to show that within a comparatively short time after the execution of the contract the precise point about which the parties now dispute, to-wit, the question of the absolute liability of the appellant to pay quarterly the royalty upon 2500 dozen pinchers annually, came into dispute between them. We think there was enough in the testimony in this respect to justify the court in making the qualification of the defendant's instruction complained of, and that such qualification was not erroneous.

As to the instructions given for appellees, and complained of by appellant, we think there was no error/ The doctrine is well settled, that, as a rule, a party guilty of fraudulent conduct shall not be allowed to cry "negligence," as against his own deliberate fraud. Even where parties are dealing at arms' length, if one of them makes to the other a positive statement, upon which the other acts (with the knowledge of the party making such statement) in confidence of its truth, and such statement is *known to be false* by the party making it, such conduct is fraudulent, and from it the party guilty of fraud can take no benefit. While the law does require of all parties the exercise of reasonable prudence in the busi-

ness of life, and does not permit one to rest indifferent in reliance upon the interested representations of an adverse party, still, as before suggested, there is a certain limitation to this rule, and, as between the original parties to the transaction, we consider that where it appears that one party has been guilty of an intentional and deliberate fraud, by which, to his knowledge, the other party has been misled, or influenced in his action, he can not escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised reasonable diligence and care. But the instruction in this case in nowise invades this rule. By the express terms of the agreement to which appellant swears he did assent, appellant bound himself to manufacture and sell 2500 dozen pinchers per year, and to pay thereon, quarterly, a royalty of $1.44 per gross. Between such an undertaking and the agreement sued on, to-wit, that the appellant would pay royalty on 2500 dozen pinchers per annum, at the rate of $1.44 per gross, payable quarterly, there is no such material difference as to import fraud, or as to lead to the conclusion that had this contract been fully read by appellant before signing he would have refused his signature thereto. The obligation to pay $300 per annum at least, was as positive under the original draft of the agreement as under that finally executed between the parties, although the phraseology differs.

The modification of the contract, making payments for royalties payable quarterly, seems to have been affirmed and acquiesced in after that change was brought to appellant's attention. The modification of the language requiring the payment of royalties on a given number of pinchers, instead of requiring the manufacture of the same number each year, and the payment of a royalty on each, did not change the legal effect of the contract to appellant's injury.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*