## WILLIAM ENNOR

v.

## GALENA & SOUTHERN WISCONSIN RAILROAD COM-PANY ET AL.

1.  WHEN EQUITY WILL RELIEVE BY AWARDING A NEW TRIAL.—Com-plainant agreed with a certain company to take and pay for certain bonds and stock upon condition that one hundred of such bonds should be sub-scribed for on like terms.   The company brought suit upon the subscription, averring that one hundred of the bonds had been so subscribed for.   But in fact only ninety-two bonds had been subscribed for on like terms.   The officers of the company included in the one hundred, which they testified had been subscribed for, bonds subscribed for on different terms.   Complainant was not in a position to know or ascertain the truth except from information

by the officers, and this information, being false but not improbable, deceived him. Judgment was rendered against complainant. A year or so after the judgment, complainant learned the truth. *Held*, that this is a case in which equity will relieve by awarding a new trial. The doctrine of *res adjudicata* can have no just application. The company can not be heard to charge as appellant's fault or negligence, that he believed its officers, and failed to insist on the trial, upon the introduction of the other subscription papers.

2. INJUNCTION RESTRAINING COLLECTION OF JUDGMENT AT LAW.— Where the company after complainant's subscription and before judgment, by its own voluntary and wrongful act became and ever since was unable to deliver to complainant the bonds and stock so subscribed for, having hypothecated them, complainant would be entitled in equity to an injunction restraining conditionally the collection of such judgment at law.

APPEAL from the Circuit Court of Jo Daviess county; the Hon. WILLIAM BROWN, Judge, presiding. Opinion filed February 29, 1884.

Mr. R. H. McCLELLAN and Messrs. D. & T. J. SHEEAN, for appellant; that every vendee of property is entitled to the article he purchased even after judgment for the purchase price, cited Freeman on Judgments, § 237; Mecum v. P. & O. R. R. Co., 21 Ill. 533; Stoolfire v. Royse, 71 Ill. 223.

As to when relief in equity will be granted against a judgment at law: Holmes v. Stateler, 57 Ill. 211; Brown v. Luehrs, 79 Ill. 579; Gregg v. Brower, 67 Ill. 532; McGahn v. Ford, 68 Ill. 215; Freeman on Judgments, 2d ed., § 507; Hubbard v. Hobson, Breese, 149; Shinkle v. Letcher, 47 Ill. 217; Foster v. Wood, 6 John. Ch. 87; Lansing v. Eddy, 1 John. Ch. 51; Davis v. Tileston, 6 Howard, U. S. Rep. 119; Wilday v. McConnel, 63 Ill. 270; Weaver v. Poyer, 79 Ill. 422.

Mr. M. Y. JOHNSON and Mr. J. S. BAUME, for appellee; as to *res adjudicata*, cited Rogers v. Higgins, 57 Ill. 244; Kelly v. Donlin, 70 Ill. 378; Briscoe v. Lloyd, 64 Ill. 33; Hicks v. Chapin, 67 Ill. 375; Sanders v. Jednings, 2 J. J. Marsh, 513; Howell v. Goodrich, 69 Ill. 556; Mellendy v. Austin, 69 Ill. 19.

PLEASANTS, J. This was a bill filed by appellant to restrain conditionally all proceedings for the collection of a judgment recovered against him by the railroad company and assigned to the iron company, and for a new trial. On final hearing

upon the pleadings and proofs the circuit court found its allegations unsustained, and dismissed it for want of equity. He appealed from this decree, and here assigns it for error.

It appears that he subscribed for eight bonds and forty shares of stock of said railroad company, under a paper of which the following is a copy: "We, the undersigned, hereby agree to take the number of first mortgage bonds and shares of stock of the Galena & Southern Wisconsin Railroad Company set opposite our names, and to pay for the same at the rate of six hundred and fifty dollars in cash for each one thousand dollar bond and five shares of stock, on demand being made by the secretary of the company. The money to be deposited in one of the banks of Galena as collected, and left as a separate fund to be used for building and equipping an extension of the Galena & Southern Wisconsin Railroad to Wingville. This subscription not to be binding unless one hundred of said bonds shall be subscribed for. Galena, February, 1877."

On this subscription the railroad company brought its suit, averring that one hundred of said bonds had been subscribed for "under said agreement," and that defendant had refused to pay on demand duly made; and at the June term, 1879, of the Jo Daviess Circuit Court, recovered a judgment for $6,568 damages, and for costs. A *fi. fa.* having been issued thereon and returned unsatisfied, a *ca. sa.* was sued out, July 11, 1879, upon which the defendant was imprisoned for about fifteen months, and until released on bail in proceedings for his discharge under the insolvent debtor's act, which are still pending. After such release he filed the bill herein, alleging that he was then first informed of the facts therein set forth in detail as grounds for the forms of relief alternatively asked, and which, generally stated, are: First, that the railroad company, after his subscription and before judgment, by its own voluntary and wrongful act, became, and ever since has been and still is, unable to deliver the bonds and stock so subscribed for; and Second, that the judgment was obtained by accident, or by fraud of the company, without his fault in respect thereto.

The evidence preserved in the record shows, and it is ad-

mitted, that ever since June 18, 1878, said railroad company has been without control of any of said bonds; that on that day it hypothecated all it had; that under a decree of foreclosure against it, of May 3, 1879, for all the mortgage bonds it had executed, all its tangible property and franchises were sold and thereupon a new organization was effected, since which time it has been wholly without property and unable to issue or deliver, much more to secure, any stock or bonds whatsoever. In short the corporation was thereby to all intents, practically extinguished. Wherefore complainan: prayed that all proceedings to collect said judgment b; enjoined until the bonds and stock so subscribed for shall be produced, ready for delivery upon such collection or payment.

The answer offered is that this inability was a defense which ought to have been made upon the trial; that before the filing of this bill the complainant never made demand, nor ever offered nor now offers, to pay for these bonds; and that in fact he might have had them of the iron company, if he had made demand and offered to pay for them, at any time before April, 1880. And it was shown that the iron company, having held twelve of these bonds, did somehow, notwithstanding they had been proved up before the master in the foreclosure case and merged in the decree therein, retain possession and had them at the time of the trial in the hands of the plaintiff's attorney, to be produced if required. But it also appears that in April, 1880, it took in lieu of them the amount found due upon them, in stock of the new organization, and then sold said stock to the Chicago & North Western Railway Company.

While it may be that the inability of the plaintiff to deliver the stock and bonds, if properly shown, would have been a good defense, the failure to show it could have no further effect than to warrant the verdict as against that objection, and to make the judgment thereon, so long as it remains in force, an adjudication of the fact that the plaintiff did then have control of and was ready to deliver them upon receipt of the price or of the judgment therefor. But the effect of the

judgment ·for the price was to consummate the sale of these bonds and vest the title to them in the defendant, subject only to the right of plaintiff as vendor to retain possession until its payment, with all risk of their loss or destruction without its fault. The company then became trustee, holding them for the defendant, to be delivered upon such payment, and was bound to take ordinary care for their preservation for that purpose. They were not its property, and therefore not liable for its debts. It was under no more obligation or necessity, and had no more right to hypothecate or otherwise convert or dispose of them for its own use without consent of the defendant than any other property not its own. Hence any such disposition was voluntary and wrongful. Before the judgment, such voluntary act, by which they were put beyond reach of the defendant even upon payment of their price, would at law have suspended the right to demand such payment. For payment and delivery were mutual and concurrent obligations, and it is a rule of universal application to contracts imposing such, that neither party thereto can require performance by the other while he is himself unable, through his own voluntary act, to perform on his part. And after judgment it would be liable, even at law, upon its collection or payment, for the damages for non-delivery. But equity will look to substance and disregard form. The fact that the evidence of plaintiff's right to the price has been changed from contract to judgment, which gives it power at law to enforce payment without concurrent delivery, in the view of equity will make no difference. That of which the plaintiff demands payment is still the price, and the obligation to deliver the thing sold is in equity still concurrent. Another reason shown for not leaving the defendant to his right of action at law for damages for non-delivery upon payment, is that the plaintiff is entirely insolvent. Nor, having voluntarily put it out of its power to deliver the things sold, in specie, should it be permitted to claim the benefit of their depreciation, if any, since the sale. It would not be so permitted, at law, before judgment, and ought not, in equity, after.

Nor should the fact that the defendant did not make demand,

or aver his willingness now to pay for the bonds upon their delivery, be regarded as at all important. It is conceded that since April 1880, delivery by the railroad company or the iron company has been impossible, and the inability of each has been shown to be the consequence of its voluntary act. Such demand and offer, then, would have been altogether idle. His unwillingness, if a fact, was and is no legal hindrance to the company. It has a judgment against him, and while it remains in force he can have no will as against its operation. Its collection can be and is being attempted to be enforced, legally, without regard to his will, and therefore the company can not urge, as a bar to its restraint by equity, that he does not show himself willing.

Although no strict precedent for this relief here asked has been shown by counsel for appellant or found by the court, upon principle we are unable to find in the record any defect in his title to it.

In respect to the other—the granting of a new trial—we think the authority both clear and abundant.

It appears that the railroad company never had a legal cause of action against appellant, for the reason that only ninety-two at the most, and not one hundred, of the bonds mentioned in his subscription as required by its condition, were ever subscribed for. The evidence is full, clear and uncontradicted that before the suit in question was brought and while the company was pressing appellant for payment, its president repeatedly told him the number required to make his subscription binding had been taken; that the only subscription paper produced on the trial was the one signed by appellant, which showed only seventy-three subscribed for; that the ex-secretary of the company positively testified that one hundred had been in fact subscribed for and that the number required in addition to those shown on the paper produced were shown on other papers in its possession; that only two other papers, subscriptions for these bonds, were ever in existence, which were produced and identified on the hearing of this cause; that one of these showed only nineteen bonds thereby taken and the other only

ten; that the latter was in the words and figures following, to wit:

"GALENA, April 13, 1877.

"We the undersigned hereby agree to take the number of first mortgage bonds, of one thousand dollars each, of the Galena & Southern Wisconsin Railroad Company, set opposite our names, at sixty-five cents on the dollar, and pay for the same on demand being made by the secretary of the company, at any time after said railroad is graded to a point within five miles of the village of Montfort, Wisconsin. The above to be in force only until September 20, 1877;" that "Montfort," here mentioned, was another name for the "Wingville" mentioned in the other paper herein above copied; that work on this extension finally ceased before September 20, 1877, and said railroad was never graded to a point within five miles of said village; that nothing was ever paid by the subscribers, who were residents of said village, or claimed by the company upon the subscriptions to this paper or any or either of them, and that complainant's subscription, if it had been paid when first demanded or at any other time, would not have sufficed to grade the road to a point within five miles of said village.

Complainant's agreement was to take and pay for the bonds and stock subscribed for by him only upon condition that one hundred of such bonds should be subscribed for on like terms. The ten shown on the paper last above copied were not so subscribed for, nor did those subscriptions ever become available for any purpose, either to the company or to the other subscribers. They were made upon substantially different terms, which were never complied with on the part of the company.

These circumstances fairly charge it with knowledge, through its officers, at the time the lawsuit in question was brought and tried, of the fact that only ninety-two had been subscribed for on the terms of complainant's subscription, and that the latter was therefore not binding upon him. Indeed the same ex-secretary whose testimony on that trial has been already referred to, testified on the hearing of this cause that he never

had any faith in the subscriptions for those ten bonds. Complainant averred and proved that until more than a year had elapsed after the judgment he had no knowledge, information or suspicion of the facts nor any reason to believe or suspect it to be as it now appears in respect to their condition, or to the number subscribed for. He was not in a position to know or ascertain it except from information by the officers of the company, and this, being false but not improbable, deceived him, as it did also the court and jury. The company can not be heard to charge as his fault or negligence in any degree that he believed its officers, whom it, to all appearance, so fully accredited. If his attorney, by his failure to insist upon the production of the other papers, waived his right to the primary and best evidence of this material fact in issue, he certainly did not waive the right to have the secondary evidence truthful. We can not regard such failure, under the circumstances shown, as negligence, and if it were, the company, for the reasons stated, should be estopped to take advantage of it. Linington v. Strong, 107 Ill. 295.

Nor could he have had relief upon motion for a new trial, because of his ignorance of the fact; nor by appeal or writ of error, for there was no error apparent in the record. And yet to enforce the judgment would be inequitable because, as now appears, there was not even a *prima facie* case for it. It had no foundation in merit or in contract. For its pretended consideration the defendant has never received and never can receive anything of value. And being now impeached by a fact of which he was kept in ignorance, and prevented from availing himself by the act of the plaintiff—which was a fraud if it was not an accident or a mistake—without negligence on his own part, it seems clearly within the rule established by the authorities, according to which equity will relieve against it by awarding a new trial. McGehee v. Gold, 68 Ill. 215; Smith v. Allen, 63 Id. 474; Wilday v. McConnell, Ibid. 279; Gregg v. Brower, 67 Id. 532; Weaver v. Poyer, 79 Id. 422; Brown v. Luehrs, Ibid. 579; Holmes v. Stateler, 57 Id. 211; Shinkle v. Letcher, 47 Id. 216; Propst v. Meadows, 13 Id. 169; Weirich v. De Zoya, 2 Gilm. 385; Abrams

v. Camp, 3 Scam. 290; More v. Bagley, Breese (Beecher's ed.), 94; Hubbard v. Hobson, Ibid. 190. These cases show that neither the rule of *res adjudicata* nor any principle on which it rests can have a just application to this.

It was therefore error to dismiss the bill for want of equity. The decree of the circuit court must be reversed and the cause remanded for further proceedings in conformity herewith.

Reversed and remanded.