## J. C. Buckley v. Acme Food Company.

1. VERDICT—*when, not disturbed.* The jury are the sole judges of the credibility of the witnesses, and where there is nothing in the record showing that they were influenced in their verdict by passion or prejudice, the Appellate Court is slow to disturb the judgment upon the ground that such verdict is not responsive to the evidence.

2. FRAUD—*when evidence of collateral, is incompetent.* Where fraud is the basis of a defense to a written instrument, it is not competent, in support thereof, to show a like fraud committed upon another not connected with the suit, where it does not appear that the facts and circumstances are admitted and an intent to defraud denied, and where there is no offer to show a general scheme or plan to defraud the public by the means alleged to have been practiced in the particular instance.

3. NEGLIGENCE—*when, will not preclude defense of fraud.* While the law requires of all parties the exercise of reasonable prudence in the business of life, and it does not permit one to rest indifferent in reliance upon the interested representation of an adverse party, still there is a certain limitation to this rule, and as between the original parties to the transaction, where it appears that one party has been guilty of an intentional and deliberate fraud, by which, to his knowledge, the other party has been misled or influenced in his action, he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised reasonable diligence and care.

Buckley v. Acme Food Co.

Action of assumpsit. Appeal from the Circuit Court of Menard County; the Hon. THOMAS N. MEHAN, Judge, presiding. Heard in this court at the November term, 1903. Reversed and remanded. Opinion filed March 16, 1904.

THOMAS P. REEP and CHARLES NUSBAUM, for appellant.

JOHN M. SMOOT and JOHN L. LANING, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in assumpsit by appellee against appellant to recover the sum of $480 alleged to be due for 6,000 pounds of "Acme Food" sold by appellee through their agent Duncan, to appellant, and for which it is claimed appellant executed a partly written and partly printed order. The defendant interposed the plea of general issue, and a special plea alleging that the execution of the said order was procured through the fraud and circumvention of appellee's said agent, Duncan. A trial by jury resulted in a verdict and a judgment for plaintiff in the sum of $325, from which the defendant appeals.

There is a direct and irreconcilable conflict in the evidence as to when, where and under what circumstances the order was executed. Duncan testifies that the sale of the food to appellant was absolute, and that the order was drawn up by him on the morning of November 5, at appellant's buggy shed, at his home near Atterbury, and was then and there signed by appellant; that appellant desired to handle the food as a dealer; and that afterwards he and appellant, in the latter's conveyance, called upon several cattle dealers in the vicinity and took orders from two of them, to be filled by appellant; that the order in controversy was forwarded to appellee, which shipped the food to appellant, who paid freight thereon and removed the same from the depot to his home.

While appellant admits signing the order, he claims that the arrangement was only that he was to receive the food, haul it from the depot and store it for appellee, and to introduce Duncan to the farmers and cattle dealers in the

vicinity and assist him in selling the food, for which services he was to receive two cents per pound on all sold. He denies having signed the order at his home in the morning and testifies that after taking the orders from the cattle dealers as testified to by Duncan, he accompanied Duncan to the depot at Oakford to bid him good bye; that Duncan then said that they had a little matter to fix up, whereupon they went into a store and Duncan threw down a book, doubled over the leaf and told him to put his name down there, stating that the purpose of the paper was to show the company that appellant was to receive the food and store it at his place; that he then signed the paper without reading it, because of his confidence in Duncan, and that he did not know that he was signing an order for food. There is some evidence in the record tending to corroborate each of said versions of the transaction. Inasmuch as the jury were the sole judges of the credibility of the witnesses and there is nothing in the record showing that they were influenced in their verdict by passion or prejudice, we are not inclined to disturb the judgment upon the ground that the verdict was not responsive to the evidence.

Appellant offered to prove by the witness Hornback, that the appellee, about the same time the alleged fraud was committed upon appellant, through its agents, committed the same alleged fraud in the same way upon the witness; that witness was induced to sign a similar order upon the false representation of another agent that it was a memorandum to show that the goods were to be stored; but the court refused to admit this evidence. Appellant insists that the evidence was competent, not as substantive proof of the fraud upon appellant, but to show that he, appellant, had not misunderstood the appellee or its agent; that it should also have been admitted for the purpose of corroborating the evidence of appellant, and also to bring home to appellee a guilty knowledge of the frauds of its agents. The court properly refused to admit the evidence offered. Its admission would have introduced a collateral issue calculated to divert the minds of the jury from the real

Buckley v. Acme Food Co.

issues of the case, and to mislead them. The case of Gardner v. Meeker, 169 Ill. 40, cited by appellant, involved the legality of the consideration of the note sued upon. It was claimed that it was based upon a so-called option deal, and the whole case turned upon the question as to whether a delivery of the commodity sold was contemplated by the parties, or whether the transaction was to be closed by the payment of differences. The court held that evidence of a chain of similar transactions between the same parties extending for a period of three months after the giving of the note sued upon, was competent as tending to show the intent of the parties. In the case at bar the intention of Duncan is not in issue. If the version of the transaction detailed by appellant was true, clear intent to defraud was shown. If the facts and circumstances were admitted, but an intent to defraud denied, a different question would be presented. The transaction proposed to be proved was between an agent other than Duncan, and one Hornback. They were separate, distinct transactions and what took place between them in no way tends to prove what occurred between Duncan and appellant. We cannot see how the evidence would have tended to corroborate appellant or to bring home to appellee a guilty knowledge of the frauds of its agents. There was no offer to show, or evidence tending to prove, a general scheme, plan or purpose on the part of appellee to defraud the public by the means alleged to have been practiced by Duncan in this particular instance.

At the request of appellee the court gave to the jury the following instruction :

" The court instructs the jury that the law requires of every person the exercise of reasonable prudence and caution in the affairs of life, and the law requires that before relieving a party from a contract on the ground of fraud in obtaining its execution, it should appear from the evidence, that on entering into such contract he exercised reasonable care and prudence to learn its nature and contents before he signed it; and the jury are further instructed that if they find from the evidence that the defendant could read at the time he signed the contract sued on, then it was the duty of the defendant to read such contract for himself

before he signed it, unless the jury believe from the evidence that he was induced not to do so, without the want of reasonable care and prudence on his part, by the wilfully false statements of the plaintiff's agent; and if the jury find from the evidence that the defendant was able and had full opportunity to read such written contract before signing it, and was not induced to forego reading it by wilfully false statements on the part of plaintiff's agent, or that the defendant under all the facts and circumstances shown by the evidence did not exercise reasonable prudence and caution in not reading such written contract for himself before he signed it, then the court instructs the jury that the defendant cannot now be permitted to say that he did not know what was contained in said contract when he signed it, and the jury should find that when made, the contract became binding on the defendant."

By his special plea appellant alleged that his signature to the contract sued upon had been procured by fraud and circumvention of Duncan. Appellant testified that he did not purchase 6,000 pounds of the food from appellee; but that the same was shipped to him for storage only; that he did not intend to sign nor know that he was signing any order for the same and that he did not read the paper before signing but relied upon the statements made by Duncan that it was simply a memorandum to show to whom the food was to be shipped and where it was to be stored. If this be true, appellant was clearly guilty of negligence in not ascertaining the contents of the paper before signing it.

By the latter clause of the instruction the jury were unqualifiedly told that if the defendant under all the facts and circumstances shown by the evidence, did not exercise reasonable prudence and caution in not reading such written contract for himself before he signed it, then he could not be permitted to say that he did not know what was contained in said contract when he signed it, and the jury should find that when made, the contract became binding on the defendant. Under it the jury had no alternative but to find for the plaintiff, his negligence having been established by his own testimony.

In Linington v. Strong, 107 Ill. 295, the court, at page 302, says: "While the law does require of all parties the

exercise of reasonable prudence in the business of life, and does not permit one to rest indifferent in reliance upon the interested representation of an adverse party, still, as before suggested, there is a certain limitation to this rule, and as between the original parties to the transaction, we consider that where it appears that one party has been guilty of an intentional and deliberate fraud, by which, to his knowledge, the other party has been misled, or influenced in his action, he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised reasonable diligence and care." If the latter clause of the instruction under consideration correctly states the law, then no matter how flagrant the fraud or what deceit was practiced upon a person to induce him to execute a written contract, yet, if he was negligent in not ascertaining the true contents of the written contract, and did not exercise reasonable prudence and caution in not reading such written contract for himself before signing it, he is not permitted to make the defense that it is not his contract, that it was obtained by fraud and circumvention, and, therefore, not binding upon him. The instruction incorrectly stated the law and giving the same was prejudicial error.

Instruction No. 8, given at the request of appellee, is as follows: "What is negligence in signing a contract without reading the same is not a question of law, but one of fact for the jury, to be judged of from the peculiar facts and circumstances of each case." The instruction should have been refused. As we have said, the question of negligence was not involved in the case. It is a suit between the original parties; the rights of third parties are not in controversy; and no matter how negligent the defendant may have been in signing the contract without reading the same, if he was induced to do so through the intentional and deliberate fraud of plaintiff or its agent, it cannot recover thereon.

For the errors indicated, the judgment of the Circuit Court will be reversed and remanded.

*Reversed and remanded.*