WILLIAM E. S. BUNN *et al.*

*v.*

JACOB SCHNELLBACHER *et al.*

*Filed at Ottawa November 9, 1896.*

1. FRAUD—*what representations as to price of land purchased will constitute fraud.* Representations that an option has been obtained for land at a certain price, when, in fact, a rebate was to be made therefrom, upon which representations others rely in entering into an agreement for the purchase of the land jointly with those making such representations, constitute actual fraud entitling such others to an accounting, even if no partnership is formed.

2. SAME—*when rights of innocent purchaser will be protected.* Lots conveyed by one of the members of a joint enterprise, after a division among them, to his father in good faith, in payment of indebtedness to him, cannot in his hands be charged with a sum found due from the son upon an accounting, because of fraudulent representations to other members of such enterprise.

*Bunn* v. *Schnellbacher*, 59 Ill. App. 222, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. THOMAS M. SHAW, Judge, presiding.

FOSTER & CARLOCK, for appellants:

If a vendor represents to his vendee that he paid $14,000 for a piece of land when in fact he paid only

$10,500, such misrepresentation is not fraudulent in law, and if the vendee relies on the false statement and buys the land, he cannot afterwards recover back a part of the purchase money. *Banta* v. *Palmer*, 47 Ill. 99; *Merryman* v. *David*, 31 id. 404; *Faulds* v. *Yates*, 57 id. 416.

Appellees could not affirm the sale, take the land, and at the same time recover for the profits made by their agents. They must either affirm or disaffirm. *Ely* v. *Hanford*, 65 Ill. 267.

It is, of course, impossible for the grantor, at the same time, to maintain title to the property and yet assail it as fraudulent as to himself. *Eldredge* v. *Trustees*, 111 Ill. 576.

Even if it could be said that a partnership unintentionally resulted from this deal in land, it is a well settled rule that the owners of property may sell the same to the firm they are forming, at any price agreed on, provided they make no fraudulent representations. *Oil Co.* v. *Densmore*, 64 Pa. St. 43; *Short* v. *Stevenson*, 63 id. 96; *Faulds* v. *Yates*, 57 Ill. 416.

JACK & TICHENOR, for appellees:

A trustee or agent cannot purchase on his own account what he sells on account of another, nor purchase on account of another what he sells on his own account; and if he does so, the *cestui que trust* or principal (unless, upon the fullest knowledge of all the facts, he elects to affirm the act of the trustee or agent,) may repudiate it, or he may charge the profits of the trustee or agent with an implied trust for his benefit. *Parker* v. *Nickerson*, 137 Mass. 487; 112 id. 195; *Mining Co.* v. *Spooner*, 24 Am. & Eng. Corp. Cas. 1.

A promoter cannot, without informing his company, make an agreement with the vendor of the property that out of the price paid for the land he shall receive compensation or a bonus for his service in promoting the sale. *Mining Co.* v. *Grant*, L. R. 11 Ch. 918; *Bagnall* v. *Carleton*, 6 id. 371; *Fawcett* v. *Whitehouse*, 1 R. & M. 132; *Short* v.

*Stevenson,* 63 Pa. St. 95; *Simmons* v. *Vulcan Co.* 61 id. 202; *Hitchins* v. *Congreve,* 1 R. & M. 150; *Getty* v. *Devlin,* 70 N. Y. 504; 54 id. 403; *Hodge* v. *Twitchell,* 33 Minn. 389; *Grant* v. *Hardy,* 33 Wis. 668; *Emery* v. *Parrott,* 107 Mass. 95; *Luke's case,* L. R. Ch. App. 469; *Pearson's case,* L. R. 5 Ch. D. 336.

Per CURIAM: After a full consideration of this case and the arguments of counsel we are unable to find any sufficient ground upon which to differ from the conclusion reached by the Appellate Court, or from the reasons given therefor in the opinion of that court delivered by Mr. Justice CARTWRIGHT. That opinion will therefore be adopted as the opinion of this court. It is as follows:

"The controversy in this case arose out of the purchase of a tract of land containing about fourteen acres, known as Selby Park, adjoining the city of Peoria on the south, in which purchase the appellees, Jacob Schnellbacher and Isaac N. Feger, by their bill of complaint, charged that they were defrauded by the appellants, William E. S. Bunn and George W. Lyon, their associates in the purchase who bargained for the tract, by false representations as to the amount paid. The charges were denied and the cause was referred to the master, who reported in favor of appellees, and, with a slight modification of his findings as to the amount, the court confirmed his report and decreed accordingly.

"The fraud charged consisted of alleged false representations by the defendants, William E. S. Bunn and George W. Lyon, that the purchase price of the tract of land was $14,000, to which each of the four was to contribute an equal share, when in truth the purchase price was only $10,500, and that by such false representations the complainants were induced to pay more than their share of the purchase money. It was shown on the hearing that said Bunn and Lyon had procured a written agreement on September 19, 1887, from James Selby for a conveyance to them from said Selby and Michael D.

Spurck, the owners, of the tract of land for $14,000; that Selby at the same time gave them a writing that there was to be a rebate of $3500 from the price named in the contract; that they then paid Selby $500 on the purchase, and afterwards tried to organize a company of fourteen persons to pay $1000 each and buy the land for a race track, of which company complainant Schnellbacher agreed to become a member; that said scheme failed, and Bunn and Lyon being unable to meet a payment coming due December 19, 1887, obtained from Selby an extension for thirty days; that afterwards complainants agreed with Bunn and Lyon to each take a one-fourth interest in the land, and on February 1, 1888, by agreement of the parties, Selby and Spurck conveyed the land to the complainant Schnellbacher in trust for himself and the complainant Feger, and said Bunn and Lyon, each owning one-fourth interest, and Schnellbacher, as trustee, executed four notes, of $2000 each, to Selby and Spurck for deferred payments and secured the same by mortgage on the tract; that the balance of the purchase price was $2500, to be paid in cash, and that complainants each paid $1500, making $3000, out of which the sum of $2500 was paid to Selby and Spurck, and Bunn and Lyon paid nothing at that time, but kept $500 of complainants' money. Selby and Spurck retained $225 out of the payment of $500 in September for interest accrued, and accounted to Bunn and Lyon for the balance.

"The complainants never knew anything about the contract made in September for a conveyance to Bunn and Lyon, or the separate agreement for a rebate, until the facts were developed on the hearing of this case. The testimony of complainants was, that Bunn and Lyon applied to them to join in the purchase of the premises from Selby and Spurck, and represented that the purchase price to be paid said Selby and Spurck was $14,000, of which $6000 was to be paid in cash and $8000 was to be secured on the property, and that in the belief that

such representations were true they each agreed to take
a one-fourth interest, and paid their money supposing
that Bunn and Lyon were doing the same. Bunn and
Lyon, while not claiming that they disclosed to com-
plainants the existence of any contract or the amount
of the purchase price, denied making any misrepresen-
tation as to the price, and claimed that they merely sold,
for themselves, one-half of the land to complainants at
a profit. All the circumstances, however, tend to cor-
roborate complainants, and Adolph Barnewalt, who was
to have taken an interest and whose place was taken by
complainant Feger, testified that Bunn and Lyon repre-
sented to him that they had an option on the tract for
$14,000 and proposed to let him have one-fourth for
$3500. We think that the fraud was proved, and that the
master and court were right in so finding.

"The complainant Schnellbacher held the title to the
tract of land as trustee for himself and his associates,
and rented it, and about three years after the purchase
it was laid out and platted into one hundred and twenty-
four lots. There was a division of the lots among the
owners, and each of them assumed one-fourth of the in-
cumbrance. Said George W. Lyon had sold his interest
November 9, 1889, to his father, the defendant Aaron
Lyon. In pursuance of the arrangement for division,
Schnellbacher conveyed to said Aaron Lyon and the
other parties the lots set off to them in severalty, and
each executed a mortgage to Selby and Spurck for his
share of the incumbrance. This closed out the transac-
tion and severed all relations of the parties.

"There is some discussion whether the arrangement
created a partnership, but we deem it immaterial whether
the relation of partners existed or not. The purchase
was for the mutual benefit of the parties, and the nego-
tiations were carried out by Bunn and Lyon alone, pro-
fessing to their associates to be acting for all. There
was actual fraud by means of false representations, and

it was not necessary that complainants should be partners with Bunn and Lyon to enable them to call for an accounting on account of such fraud. Complainants had no knowledge of the true consideration paid for the premises until 1892, when they directed counsel to file the bill in this case.

"It is argued that the transaction on the part of Bunn and Lyon was legitimate business and honest enterprise. But false statements to induce investment of money, of the character here shown, can scarcely be so classed, and we think the court was right in requiring them to refund their gains acquired by such means. But we see no reason for subjecting the lots conveyed to the defendant Aaron Lyon to sale in satisfaction of the complainants' claim against George W. Lyon, who was guilty of the fraud. Aaron Lyon did not participate in the purchase or in the fraud, and knew nothing about it. He took the property from his son in payment of indebtedness due him, and surrendered notes of his son, and the lots were conveyed to him by the trustee. He was a *bona fide* purchaser for a valuable consideration, without notice that any fraudulent representation had been made, and no reason occurs to us why he should be compelled to make the representation good. The averments of the bill that he paid no consideration for the lots conveyed to him and that they were subject to complainants' equities were not supported by any proof, but were disproved by the evidence.

"The decree will be reversed as far as it charges payment of the amount found due upon lands of the defendant Aaron Lyon and authorizes a sale of the same, and will be affirmed in all other particulars. The cause is remanded for further proceedings in accordance with this opinion."

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT took no part.