### J. Vernon Calkins v. William P. Worth.
#### Gen. No. 11,664.

1. FINDING OF CHANCELLOR—*when, not disturbed.* The finding of a chancellor will not be disturbed on appeal where the evidence upon which it is based is conflicting and was heard in open court, unless error with respect to such finding is clear and palpable.

2. FRAUD—*when joint owner of property guilty of, in making sale thereof.* Where a part owner of real estate acting for himself and as agent for his co-owner, negotiates a 'sale thereof, and does not disclose to such co-owner the true purchase price derived therefor, he is guilty of fraud and liable to account for the amount out of which his co-owner has so been defrauded.

3. FRAUD—*what not defense to charge of.* An agent who has defrauded his principal cannot set up the negligence of such principal as a defense to an action for accounting.

Bill for accounting, etc. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the March term, 1904. Affirmed. Opinion filed January 5, 1905.

SAMUEL B. KING, for appellant.

BULKLEY, GRAY & MORE, for appellee.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

Appellee filed a bill in chancery against appellant and others, alleging that in February, 1901, he and appellant purchased an apartment building in Chicago, each paying one-half of the purchase price, which building they agreed to manage until it could be sold at a profit. In the meantime the net profits were to be divided equally between them, each paying one-half of the expenses thereof. The deed was made to appellee for the benefit of both. Immediately thereafter, at the request of appellant, appellee conveyed the undivided one-half of said premises to Genevieve Frances York to hold on behalf of appellant; that about November 1, 1901, Calkins informed Worth he had an offer of $17,000 for the premises; to be paid by the assumption of an incumbrance for $6,500, $2,000 in cash, and thirteen lots in Morgan Park. They looked at the lots, and then Worth told Calkins to accept the offer if it was the best he could get. They also agreed upon a division of the lots, Worth promising to give one of his lots to Calkins as commission upon the sale; that November 8, 1901, Calkins handed a written agreement to Worth and asked him to sign it, and he did so. It conveyed Worth's one-half interest in the premises to Caroline S. McEntee. At the same interview Calkins told Worth that York had executed a similar agreement for the other undivided half of the property, and Worth believed him; that November 27, 1901, Worth conveyed to McEntee his entire interest in the apartment premises, and received therefor a deed for one-half the lots in Morgan Park and $1,000 in cash; that afterwards Worth learned that the consideration for the apartment premises was $2,000 more than Calkins had represented it to be; that in addition to payments similar to those received by Worth, McEntee had given to Calkins her note for $2,000, secured by trust deed upon the apart-

ment premises; that said note falls due November 1, 1903, and while in the possession of one Pease for collection, is owned by Calkins.

Prays for injunction against the transfer, etc., of the note, for the appointment of a receiver, for an accounting and for general relief.

Calkins filed an answer admitting the joint ownership of the apartment building, the division of the net profits equally between Worth and himself, and the sale to McEntee; but denies that he deceived Worth, or that Worth is entitled to any interest whatever in the $2,000 note. He also denies that he received any portion of the Morgan Park lots as a commission for his services.

A. L. Johnson intervened, was made a defendant and then filed a cross-bill, in which he claimed to be the owner of the $2,000 note as a *bona fide* purchaser thereof. This cross-bill was stricken from the files.

Upon the hearing the court entered a decree finding the equities were with the complainant, and also finding the facts substantially as they are set forth in the bill of complaint, and further that the alleged transfer of said $2,000 note from Calkins to Johnson was not made in good faith and was colorable only, and Johnson obtained no title to said note or to the proceeds thereof as against Worth; that said note and the proceeds, amounting to $2,050, have been paid to and are on deposit in the Northern Trust Company Bank subject to the order of the court; that Calkins had received from the maker of said note interest to the amount of $150, and that the proceeds of said note belong and should be paid, one-half to Worth and one-half to Calkins, the payment to the latter being reduced by $75, one-half the interest collected by him; and it was ordered that Worth recover $1,100 out of the moneys in the possession of said bank, which is hereby directed to pay the same to him and the balance to Calkins; that the note be marked paid and surrendered to the maker, and that Calkins pay the costs of the suit. From this decree Calkins perfected the present appeal.

Appellant, for ground of reversal, relies upon the follow-

ing points:   (1) that the relation of the parties was that of
co-tenants and not of partnership, and hence no duty of dis-
closure arises; (2) that there is no proof showing that Calk-
ins represented to Worth that the consideration for the
sale of the building was $17,000; (3) that Worth was negli-
gent in failing to make any investigation as to the truth
of the representations of Calkins; and (4) that Worth of-
fered to sell out his interest to Calkins, and the latter closed
the transaction on that theory.

The chancellor saw and heard the witnesses, and is there-
fore better qualified than are we to judge of the weight to
be given to the testimony.   " In chancery cases, where the
evidence is conflicting and heard in open court, the error
in finding as to fact should be clear and palpable to author-
ize a reversal."    Bodelsen v. Swensen, 206 Ill. 73; Shea v.
Teufert, 207 Ill. 225.

The parties hereto were joint owners of this building and
desired to sell the same.   They had bought it, not for a
permanent investment, but with the expectation of dis-
posing of it at an advance over the purchase price.   In the
meantime they were paying its expenses and sharing its
income equally.   It is true that Worth had offered to sell
his interest in the property to Calkins, but nothing came
of this offer; on the contrary the property was sold direct
to McEntee.   This fact disposes of appellant's fourth point.

It is not necessary for Worth to establish the relation of
partnership between Calkins and himself in order to sus-
tain this decree.   It is sufficient if he shows that a fiduci-
ary relation existed between them, and he establishes the
fraud alleged in the bill.   Bunn v. Schnellbacher, 163 Ill.
328.

Early in November, 1901, Calkins telephoned Worth that
he had a chance to sell the property, and asked Worth to
come down to see about it.   On the sixth day of that
month Calkins wrote Worth:   " Got an offer of 1,800 dif-
ference and I put them off and tried to reach you at Oak-
ley, also Austin, but could not catch you.   I pretended
I had seen you and offered to trade at 2,000 which I think

may be accepted as he wants to leave Thursday. Now bring in all papers and deeds at once so I can draw contract and we will go down and look at the vacant. Call me up and come down with descriptions and paper." In response to this request Worth called upon Calkins and they examined the vacant lots, and then Worth agreed to the sale, if that was the best Calkins could do. The sale was consummated. The consideration for the building, so far as Worth then knew, was the payment of $2,000 in cash, the assumption of an incumbrance of $6,500, and the conveyance of ten vacant lots in Morgan Park. The true consideration, which is established if it is not admitted, was $2,000 more, represented by the note in question, which Calkins took as his own property. In order that Worth should not know of this additional sum, Calkins drew up the contracts of sale separately. In the contract by which Worth agreed to convey his interest in the building, no mention is made of the $2,000 note; in that by which York agreed to convey the other undivided half of the building, the $2,000 note appears. When the deed was executed, in pursuance of these contracts the purchaser paid Worth $1,000 in cash and conveyed to him certain of the vacant lots, and paid Calkins $1,000, conveyed to him the remainder of the vacant lots, and gave him the $2,000 note secured to be paid by a second incumbrance on the building. Worth testifies that he received one-half of the vacant lots, with the exception of one lot which he gave to Calkins as a consideration for making the deal. It is true that Calkins denies that he received the one lot as commissions, and says that the unequal division of the lots was based upon their unequal value, and that as divided each received one-half of the lots in value. The question as to where the truth lay in the conflict of evidence upon this point was primarily to be determined by the chancellor. It inheres in the decree that he found this point in favor of Worth, and we are in accord with that finding.

In the making of this sale Calkins was plainly the agent of his co-owner. As such agent he owed to his principal

Calkins v. Worth.

the duty of acting in the transaction with common honesty and straightforward fairness.   This law is so elementary that even the layman understands it.

In Wallace v. Carpenter, 85 Ill. 590, four men bought eighty acres of land near Chicago for $90 per acre, agreeing that each should pay one-fourth of the purchase price and receive one-fourth the proceeds of the sale thereof. For convenience the title was taken in the name of one of them.   In a short time the land was sold at an advance of $4,800.   Then Carpenter wrote to Wallace that there was an incurable defect in the title and the trade had fallen through.   Wallace was thus pushed out of the trade, and each of the others took one-third of the profits arising from the sale.   Two years later Wallace discovered the fraud and filed a bill to establish his rights.   The court held, upon these facts, that a resulting trust arose by operation of law in favor of Wallace which a court of equity would enforce, although there was no written evidence to show the respective rights of the parties.   The same salutary doctrine is laid down in Bunn v. Schnellbacher, *supra;* Felt v. Bell, 205 Ill. 213; Grant v. Hardy, 33 Wis. 669; Purslow v. Jackson, 93 Iowa, 694; Davenport v. Buchanan, 6 So. Dak. 376; 2 Pom. Eq. Jur., sec. 947; and 1 Beach Mod. Law of Contracts, sec. 825.

Worth seems to have been somewhat easily hoodwinked, but his relation to Calkins was such that he was not called upon to doubt the honesty of his agent; nor, under penalty of losing his share in this $2,000 note, was he bound to inquire whether or not he was being defrauded in the transaction.   The relation between these parties was one of trust and confidence, and therefore it could not be violated by the agent to his own advantage.   The rule is well settled that one who is guilty of fraudulent conduct is not allowed to cry "negligence" in defense of his own fraud.   National Bank v. Taylor, 5 S. Dak. 99; Strand v. Griffith, 97 Fed. Rep. 854; Linington v. Strong, 107 Ill. 295; Hauk v. Brownell, 120 Ill. 161; Antle & Bro. v. Sexton, 137 Ill. 410; Leonard v. Springer, 197 Ill. 532.

The evidence in the record fully sustains the decree of the learned chancellor.

We therefore affirm the decree of the Superior Court.

*Affirmed.*