### John R. Griffith, Appellee, v. H. B. Parks et al., Appellants.

1. DECEIT—*what not defense to action of.* Negligence is not available as a defense by a party who has been guilty of fraudulent conduct, as against his own deliberate fraud.

2. DECEIT—*what not defense to action of.* Where a defendant knowingly colludes with plaintiff's agents to defraud the plaintiff, he is in no position to reap the advantages of his wrong by saying that plaintiff did not use reasonable prudence to detect the fraud of his agents whom he had a right to believe were looking out for his best interests.

Action in case. Appeal from the Circuit Court of Effingham county; the Hon. J. C. McBRIDE, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed November 11, 1911.

**Statement by the Court.** Appellee, Griffith, sued appellants in an action of case for fraud and deceit, and obtained judgment against them for $1,000.

Appellee employed appellants, Parks and Thomas, real estate agents in Altamont, to trade his two-story brick business house in Altamont and the furniture therein, for black land in northern Illinois, for which services he was to pay said firm two per cent commission. The building was worth about five thousand dollars; and the stock of furniture, about three thousand dollars. The building was mortgaged for two thousand dollars. A few weeks afterward appellant, Thomas, told appellee that he had a good trade for him, that he had a good piece of northern land, black soil, yellow clay subsoil, and was just what appellee wanted. This land was then said to be owned by the appellant, Witwer, a real estate agent with office at Kinmundy, Illinois. Appellee's house and stock was later examined by Henry Witwer, brother of C. W. Witwer, appellant; and appellee was informed by Thomas and Parks that they had made arrangements with Henry Witwer to go with appellee and Parks and Thomas to see the land. Afterwards Thomas informed appellee that Henry could not go because he had to see other parties; and further informed him that C. W. Witwer would be down that night on the C. & E. I. train at 10:30, to go with them to see the land. Thomas and appellee took that train at Altamont and found C. W. Witwer thereon. He informed them that he could not go with them to see the land, as he had to get off at Shelbyville to see about another deal. Witwer then gave instructions to Thomas how to find the land, and left them at Shelbyville. Thomas then proceeded with appellee and showed him the N. E. N. W. qr. and the N. W. N. E. qr. of Sec. 26, T. 29 North, Range 11 West of 2nd P. M., in Iroquois county. No trade was then made, as appellee did not like the land well enough. Later, however, after talking the matter over with his father,

appellee and Witwer agreed on a trade by which Witwer was to deed appellee the eighty acres of land and pay him four hundred dollars in money in exchange for appellee's house and furniture, subject to the mortgage on the building. Instead however, of deeding to appellee the land he was shown by Thomas, Witwer deeded to him the N. E. N. W. qr. and the N. W. N. E. qr. of Sec. 36, T. 29 N., Range 11 W. of 2nd P. M., in Iroquois county, being land that appellee never had seen, and which he claimed was very inferior in quality and value to the land he thought he was getting. On finding out later that he had not gotten the land he was shown and for which he. had traded, he gave notice thereof to all the appellants; and they refused on demand to rectify his wrong in any way, claiming that it was a mistake for which they were not responsible.

Appellee charges in substance in his declaration, that the appellant, Thomas, by the aid and contrivance of appellants, Parks and Witwer, with the design and purpose of inducing appellee to exchange his said brick building and furniture store to the appellant, Witwer, for the said eighty acres of land owned by the appellant, Witwer, and situated in said Sec. No. 36, and with the intent to cheat, deceive and defraud appellee, knowingly, designedly and falsely represented to appellee that the eighty acre tract of land in said Sec. No. 26 was in fact the land that was proposed to be deeded to him by Witwer in exchange for his store and furniture. Avers that by reason of such false representations and pretenses, appellee relying thereon was deceived and induced to make said exchange for said land in said Section 36, in good faith believing that the same was the said land in said Section 26, and that the said Charles W. Witwer did thereby fraudulently obtain from appellee his said store and furniture; that said land so exhibited to appellee was land of four times the value of the land

so deeded to him as appellants well knew; wherefore appellee is greatly injured, etc.

WRIGHT BROS. & DENTON and G. F. TAYLOR and W. S. HOLMES, for appellants.

BRYON PIPER and ZIMMERMAN & RINEHART, for appellee.

PER CURIAM. It is first argued by appellants that the evidence in this record does not sustain the verdict and judgment; that there is no evidence to show that appellants, Parks and Thomas, had any understanding or agreement with either Charles W. Witwer or his brother, Henry, that Thomas was to show appellee a different piece of land from that that was to be traded to appellee; and therefore a verdict should have been directed for appellants. We have examined the evidence in the record carefully and find that the evidence and the circumstances as testified to by appellee and his witnesses tend strongly to prove that the appellants entered into a conspiracy to defraud appellee in the manner claimed by him. There are some very strong facts testified against appellants that are not denied by any of them. Appellee testified that Henry Witwer told him that his brother had owned this land five or six months and that it was an eighty acre tract of black land with clay subsoil; that Charles Witwer told him that it was prairie land, black prairie land, and had a few scattering trees on it, black land with yellow clay subsoil; that Thomas told him it was a good piece of northern land, black land with a yellow clay subsoil—just what he had always wanted. He also testified that after the trade was made he began to hear rumors and get letters to the effect that he had been shown the wrong land and was cheated, and that he frequently went to Parks and Thomas about these rumors, and that they told him to "keep still," that they knew everything was all right and that they would get him a deal for the land and dispose of it.

He also testified that after he had found out that he had not gotten the land he was shown by Thomas, and that after he had sent for the Witwers and Parks and Thomas and while they and appellee's father and appellee were together, that Thomas in the hearing of all of them and in answer to Charles Witwer about the trade, said: "Yes, and if he (appellee) had kept his damned mouth shut he would have been rid of the land, and we would have traded it off for him." The foregoing facts are undisputed, and no reply was made by any of appellants, or any explanation offered by them at the time Thomas made his remarks, or at the trial in their testimony. It is also clearly proved that appellee did not get the land that was shown to him by Thomas, and that he never did see it until after the deal was made. Thomas took another party out to see the same land shown appellee in said Section 26, after the deal was made and tried to trade it off for appellee, and represented to the other party that it was land in said Sec. 36, after he had been hearing the rumors that appellee had been shown the wrong land. This took place on the day that appellee and his father actually found out that appellee had not seen or gotten the land he supposed he had purchased, and appellee then stopped the attempted second deal. Taking these circumstances with all the other controverted facts in the record, with the further admitted facts that both the Witwers promised to go with appellee and Thomas to see the lands and afterwards declined to go because of other engagements, we think the jury were warranted in their finding against the defendants. It is true that appellants, Witwer and Thomas, denied that they had any side conversation with each other on the train that night, and that Witwer then told appellee that Thomas could show him the land just as well as he, Witwer, could. It is also denied by Thomas that he told appellee that the land shown him was the very land he was to get, and that he again repeated it just before the deal, and

said there could be no mistake about it. The jury, however, have settled the controverted facts, and the case against appellants, and we find no legal reason for disturbing their finding on the facts. The jury evidently believed the story of appellee's witnesses, that the land in Sec. 36 was not black prairie land with a yellow clay subsoil, and with only a few trees standing on it, and that the land in Sec. 26 did answer that description, and that the land in Sec. 36 was thickly timbered with scrub timber and had sandy soil with a blue subsoil, and was of very much less value than the other land.

The verdict and judgment in this case must therefore be sustained unless the court has improperly instructed the jury as to the law of the case, as next claimed by appellants. The substance of the appellants' objections to appellee's given instructions is that they omit the element of ordinary care and prudence on the part of the plaintiff as a necessary finding by the jury before rendering a verdict in his favor. In Linington v. Strong, 107 Ill. 295, the court said: "The doctrine is well settled, that, as a rule, a party guilty of fraudulent conduct shall not be allowed to cry 'negligence,' as against his own deliberate fraud. Even where parties are dealing at arm's length, if one of them makes to the other a positive statement, upon which the other acts (with knowledge of the party making such statement) in confidence of its truth, and such statement is known to be false by the party making it, such conduct is fraudulent, and from it the party guilty of fraud can take no benefit. While the law does require of all parties the exercise of reasonable prudence in business of life, and does not permit one to rest indifferent in reliance upon interested representations of an adverse party, still, as before suggested, there is a certain limitation to this rule, and, as between the original parties to the transaction, we consider that where it appears that one party has been guilty of an intentional and deliberate

fraud, by which to his knowledge, the other party has been misled, or influenced in his action, he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised reasonable diligence and care." See also to the same effect, Leonard v. Springer, 197 Ill. 532.

The appellee and his agents, Parks and Thomas, are not to be regarded in law as dealing at "arm's length." He was not called upon to doubt the truthfulness and honesty of his agents. Neither was he bound to inquire whether or not he was being defrauded by them in the transaction. The relation between them was one of trust and confidence, and therefore it could not be violated by his agents to their own advantage. Calkins v. Worth, 117 Ill. App. 478; Hauk v. Brownell, 120 Ill. 161.

Appellant, Witwer, must have known that Parks and Thomas were the agents of appellee, and if he colluded with appellee's agents knowingly and for the purpose of taking undue advantage of him in the deal through appellee's paid agents, he is in no position to reap the advantages of his wrong by saying that appellee did not use reasonable prudence to detect the fraud of his agents who he had a right to believe were looking out for his best interests. Chappell v. McKnight, 108 Ill. 570.

Not only were Parks and Thomas the agents of appellee, but they were on the very best of terms apparently as friends and neighbors. They and their families visited together, met in church and in lodge room together, and were members of the same lodge. There was no reason or occasion, legally or otherwise, for appellee to suspect that he was being made a victim of deceit.

The instructions in this case as a series require the jury to believe from the evidence that all of the appellants contrived the scheme of showing appellee the wrong piece of land for the purpose of defrauding

him as charged in the declaration, and that they did defraud him by means of that scheme, and that plaintiff believed their fraudulent representations, and acted thereon to his damage, as a condition to rendering a verdict for appellee. The appellants' instructions required in addition to the foregoing that the representations must be such and made under such circumstances as to justify an ordinarily prudent man in relying upon them as true. We think that appellants had the benefit of every principle of law in their given instructions to which they were entitled, and that the other objections urged by them are not well taken, and that the judgment should be affirmed. The judgment is therefore affirmed.

*Affirmed.*

Mr. Justice McBride took no part in the hearing of this case.