Charles T. Corwin, Defendant in Error, v. Jacob N. Tillman, Plaintiff in Error.

Gen. No. 33,496.

Opinion filed December 31, 1929.

WALTER F. COOLING, for plaintiff in error; MICHAEL B. RODERICK, of counsel.

SCHIMBERG & HARRISON, for defendant in error.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

This writ of error seeks review of the decree canceling and declaring null and void a quitclaim deed to an interest in a lot in Miami, Florida, and for a return of the purchase money paid therefor of $5,250.

The gist of the bill is that defendant induced complainant by fraudulent representations to enter into the transaction whereby he received said deed.

Numerous errors are assigned which may be summed up as questioning the right to equitable relief, the sufficiency of the bill and of the evidence, and the refusal to quash a *capias ad satisfaciendum* issued upon the decree.

The main contention against the right to equitable relief is that complainant could, on his claim of fraud, have repudiated the transaction and sued at law for the return of his money. But when one repudiates a contract by rescinding it on the ground of fraud he must, under a well established principle in equity, restore the other party to the condition in which he stood before the contract was made. (*Rigdon v. Walcott*, 141 Ill. 649.) Complainant having received an unrecorded deed for the lot and defendant having, as alleged in the bill, refused complainant's offer to return the same and also the demand for the return of his purchase money, complainant in order to effect a restoration of the *status quo* clearly had a right to resort to equity to have the deed canceled and thus restore to defendant his legal title to the lot, which on the face of the deed still remained in complainant. The restoration of defendant to the *status quo* was a condition precedent to complainant's right to the return of the purchase money. So long as defendant took the attitude of rejecting any attempt to reinvest him with the legal title he is in no position to complain of complainant's resort to a court of equity to have the deed canceled and declared void. We think, therefore, the demurrers to the bill which in one form or another rested upon the

theory that complainant had a complete remedy at law, were properly overruled, and the cause was properly submitted on the main issue of fact raised by the answer to the bill, as amended in certain formal particulars, whether complainant was induced to accept the deed on the false representations. A bill in equity based on a very similar state of facts was upheld in *Bunn v. Schnellbacher,* 163 Ill. 328.

While there were express denials and contradictions of complainant's version of the transaction and of the representations on which the bill was founded, we think the claim of fraud and misrepresentation was amply sustained, not only by oral but documentary evidence. It tended strongly to prove that defendant about the beginning of October, 1925, approached complainant with reference to taking a one-fourth interest in said lot representing that he and two others were negotiating for its purchase at the price of $35,000, $21,000 in cash, subject to a mortgage of $14,000, and that each of the four purchasers would be required to put up $5,250 in cash. Induced by these statements complainant paid defendant $5,195 for his fourth share in the form of checks (subsequently cashed) and $55 cash a few days later, for which defendant gave his receipt, dated October 5, 1925, stating it was for a one-fourth interest in equity in said lot, and that defendant would procure for complainant the necessary papers to be signed by both the other two parties. At later conferences defendant undertook to explain the delay in giving title and in July, 1926, handed complainant a quitclaim deed signed by himself and wife conveying an undivided one-fourth interest in said lot. It having been handed to complainant in the dark without his examination of it, as he testified, the next morning when he noticed it was not signed by the other two parties he requested of defendant a deed signed by them. Defendant kept promising the required papers

until the following October when complainant learned for the first time from Stephenson, one of the other parties, that the purchase price of the property was $25,000 and not $35,000.

Two days later, after defendant received complainant's check, he paid $3,000 of his share and about ten days later entered into a written agreement with the other two parties, stating that each of the three had paid in his proportionate share of the purchase price of $25,000, and that the title was to be held by one of them, Stephenson, and that each would be entitled to one-third of the proceeds of the sale of the lot and was to pay one-third of the encumbrances, interest and taxes thereon.

Defendant claimed that what he sold and agreed to sell complainant was an undivided one-fourth interest out of his one-third interest. Stephenson testified that defendant told him to tell complainant that $35,000 was paid for the property. When asked with regard to that defendant testified he did not remember whether he so told him or not. Such an uncertain state of mind upon such an important fact in a litigation involving his integrity does not commend his evidence to favorable consideration. In his letter of October 7, 1925, remitting to Stephenson the $3,000, he said: ''Can sell one-fourth interest in the lot for $5,250 cash, so that would make us a profit of $2,500 to be divided between you, Newman and myself. . . . You will have to hold the purchase price at $35,000 on the lot and the profits over and above to be divided four ways.'' These statements are inconsistent with his claim that he was selling complainant one-fourth of the lot out of his interest of one-third, and tend to confirm the alleged fraudulent representations. Without referring specifically to other testimony of a corroborative character we have no doubt as to the sufficiency of the evidence to establish the alleged fraud and that through it complainant was induced to part with his money.

It is urged that the deed should have been set forth in the bill. It was set out in the original bill, but on some theory the court on its own motion after hearing the demurrer struck the same from the bill. It was not necessary, however, to set out the deed in full or in substance so long as it was sufficiently identified and described to warrant its introduction in evidence. And it was sufficiently described in the decree. The gist of the case was fraudulent representation whereby complainant was induced to accept the deed, and not its sufficiency to pass title under the Florida laws.

The contention that Tillman's wife was a necessary party to the bill possesses no merit. The contract for the deed was with Tillman and he received the consideration therefor. Her signature to the deed was apparently for the purpose of conveying her dower rights. The decree on the prayer asked for took nothing from her, but, on the contrary, the cancellation of the deed thereunder would restore whatever rights she had lost.

Nor was it necessary that the bill should ask for the cancellation of the contract. If its repudiation was all that was necessary, complainant could have sued at law for the return of the money he paid upon it. But, as before stated, before he was entitled to its return he was bound to restore defendant to his former status. A court of law could not nullify the effect of the execution and delivery of the quitclaim deed. Resort to equity to have it rendered void and canceled was necessary. Law cases cited by plaintiff in error brought to recover money paid upon false representations in which it was held that the plaintiff need not tender what he received therefor when it was worthless, have no application here where it is not questioned that plaintiff in error had some title to the lot his deed purported to convey. That a court of equity had jurisdiction we have no doubt.

Defendant filed a petition for a rehearing on the ground of newly discovered evidence supported by certain affidavits. We have carefully examined both the petition and the affidavits and think the petition was properly denied. The most that can be said of the affidavits is that they tend merely to impeach the credibility of complainant and one of his witnesses on immaterial issues, namely, as to where the money was paid and whether complainant was ever alone in Tillman's house. It is not questioned that the money was paid. The gist of the case is that the payment was induced by fraud. There is nothing in the alleged newly discovered evidence that purports to controvert that claim. None of the affiants claimed to have overheard the conversations upon which that claim is predicated. The petition and affidavits do not set forth anything which if true should produce on another trial of the issue a different result on the merits, one of the main requisites to entitle one to a rehearing on newly discovered evidence. Such evidence must not only be material to the issues but of a controlling and conclusive character. (*Crane Co. v. Parker*, 304 Ill. 331.) The evidence relied on as such is not of that character.

At a subsequent term defendant made a motion to vacate the decree and to dismiss the amended bill for want of equity on the ground that the court was without jurisdiction of the subject matter. As before stated, that ground of the motion was ill-founded, and if there was any alleged error which involved the merits of the case it was too late to entertain such a motion. (*Tosetti Brewing Co. v. Koehler*, 200 Ill. 369.)

After entry of the decree defendant was taken into custody on a writ of *capias ad satisfaciendum* issued by the clerk of the court. There was no express provision therefor in the decree. The claim of error in the court's ruling is based on the contention (1) that no writ can be issued upon a chancery decree for money,

whatever the findings of fact, and (2) if the writ may issue the clerk had no authority to issue it without an express provision in the decree therefor.

The first contention is predicated upon the claim that malice is not the gist of the action as is required to authorize such a writ upon a common law judgment. In the case of *Whalen v. Billings,* 104 Ill. App. 281, there was involved consideration of the power to award such writ under a decree in chancery wherein were findings that certain property was obtained upon false and fraudulent representations, and it was held that it was an appropriate writ under our statute (Cahill's St. ch. 77, § 5) with reference to an execution against the body, and is "a final process according to the nature of the case" in accordance with sec. 47 of the Chancery Act, Cahill's St. ch. 22, ¶ 47, and authorized under the power conferred by sec. 42 thereof. The court there cited also from Freeman on Executions to the effect that where a decree is for the payment of money, and a statute gives authority to issue writs appropriate for its enforcement, satisfaction of such a decree may be sought by *"capias ad satisfaciendum,* in any case where such writ would be proper, had the recovery been in law instead of equity." The court there recognized the general and well-recognized rule that where a court of chancery has obtained jurisdiction it would retain the case for final determination of all matters at issue arising therefrom, and in its discretion may proceed to establish purely legal rights and grant legal remedies, and that the same remedies to enforce the collection of a chancery decree for money may be resorted to as in the case of a judgment at law. We concur in all that was there said upon that subject.

But it is argued that the decree referred to in that case expressly provided for the execution of such a writ. That fact, however, does not affect the right to

the process for carrying the decree into effect. Under sec. 47 of the Chancery Act, Cahill's St. ch. 22, ¶ 47, that right depends upon "the nature of the case." While the action is in form for equitable relief the gravamen and gist of the action is a tort clearly set out in the second amended bill, namely, the perpetration of a malicious fraud. Had complainant brought an *ex delicto* action of deceit based upon the same state of facts and obtained judgment there would be no question as to malice being the gist of such action and that a *ca. sa.* would issue to enforce the judgment. Upon the same facts malice is none the less the gist of the action because relief is sought in equity, and under the principles stated in *Whalen v. Billings, supra,* resort may be had to the same remedy as at law to enforce the collection of the decree for money. The allegations in the amended bill and the finding in the decree are that defendant falsely and fraudulently made the misrepresentations to complainant therein recited for the purpose and with the intention of deceiving and defrauding him. It cannot be doubted, therefore, that malice was the gist of the action. The test is not the form of the action (*Barney v. Chapman,* 21 Fed. 903) nor the specific relief asked, but whether the facts upon which the right of action rests imply malice.

What we have said is sufficient to indicate, we think, that a jury trial is not necessary in order to justify such a writ, as contended by plaintiff in error, and that no order of court is necessary for the issuance of the writ where the record shows the judgment is based on the commission of a malicious tort. In *People v. Walker,* 286 Ill. 541, where there was a judgment in an action of trespass for assault and battery and a *ca. sa.* was issued, the court held that no court order therefor was necessary, and as the statute authorized it in the same terms as an execution against the defendant's property, it was the duty of the clerk to issue the writ on the request of the plaintiff.

We think, therefore, the motion to quash the writ was properly overruled and that the decree should be affirmed.

*Affirmed.*

Scanlan and Gridley, JJ., concur.